# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3398

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Kevin Dondi Craig, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 14, 2010
Filed: January 5, 2011

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Kevin Craig appeals his conviction based on a conditional guilty plea and his subsequent 120-month sentence for being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). In this appeal, Craig argues that the district court[1] erred in denying his motion to suppress physical evidence and statements he gave to law enforcement officers. He also appeals his sentence, arguing that one of his prior convictions was not a "crime of violence." We affirm.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

## I.

Around 10:30 p.m. in late November 2008, emergency operators for Butler County, Iowa, received a phone call from a motorist who reported seeing a woman walking down the road, carrying a baby, and attempting to flag down passing vehicles. As Butler County Deputy Sheriff Kiley Winterberg attempted to locate the woman, emergency operators received another call reporting a young woman and baby seeking shelter at a house in the area. Deputy Winterberg arrived at the house and met the young woman, who is identified in the police report as C.W.

C.W. reported that earlier that evening Kevin Craig, her stepfather, had, after drinking heavily with friends, retrieved a handgun from a bedroom and fired a shot through the front door of the residence. C.W. then took her baby to a bedroom where she was undisturbed for a short period of time until Craig entered the room, began screaming at C.W., and pulled C.W.'s hair. C.W. then fled the residence with the baby. C.W. also told Deputy Winterberg that Craig was a felon and had sexually assaulted her in the past. Deputy Winterberg then confirmed that Craig was a felon and a registered sex offender. C.W. warned Deputy Winterberg to be cautious as he approached Craig's residence because Craig was intoxicated, upset, and had multiple firearms.

Deputy Winterberg contacted Sheriff Jason Johnson for directions on how to proceed. After discussing the situation, it was agreed that Deputy Winterberg, along with two other deputies and the Chief of Police of Greene, Iowa, would approach the residence to determine whether Craig was in the residence, and if no one answered, officers would seek a search warrant for the home.

After midnight, the officers approached Craig's residence. In response to Deputy Winterberg's knock, Corey Sawvel answered the rear door of the residence. Officers removed Sawvel and placed him in handcuffs. Recognizing that Sawvel did

not match Craig's description, officers asked him whether Craig was in the residence. Sawvel responded that he believed Craig had left earlier in the evening with a female. Officers requested permission to search the residence, and Sawvel shrugged his shoulders and responded, "do what you got to do." Before officers entered the residence, however, Sawvel told them it was not his house.

Officers entered Craig's home and announced themselves as "sheriff's office." As they did so, Craig responded from behind a closed door, "Who the fuck is in my house and what the fuck is going on?" At the officers' request, Craig came out of the bedroom, clothed only in a blanket. In response to officer questioning, Craig admitted to being a convicted felon and to shooting a gun earlier in the evening. Craig was arrested and transported to the Butler County Jail.

While inside the residence, officers observed marijuana and several firearms in plain view. Deputy Winterberg prepared a search warrant application that described the events of the evening and also included the officers' observation of the drugs and firearms after their warrantless entry into the residence. Officers later executed the search warrant and seized firearms, ammunition, and other items from the residence.

Later that morning, Craig made a first appearance based on state court charges. Bond was posted on his behalf, and he was released from detention. The following day, Craig went to the Sheriff's office and offered to provide a urine sample for drug testing. Sheriff Johnson testified that he was not expecting Craig and had not requested the urine sample but administered the test at Craig's request. After the test, Craig asked to speak with Sheriff Johnson. Sheriff Johnson agreed to speak to Craig and then activated a digital recording device. At the beginning of the conversation, Sheriff Johnson reminded Craig of his Miranda[2] rights. Craig proceeded to provide his version of the events of the evening, admitting that he had used a shotgun as a club

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

and had shot a "snub nose" through the screen door.  He also admitted going into C.W.'s room, waking her up, and wrestling with her.

The government indicted Craig on one count of being a felon in possession of a firearm and ammunition in violation of section 922(g)(1).  Craig sought to suppress the physical evidence and statements he made both the night of the arrest and later to Sheriff Johnson.  Prior to a ruling on his motion, Craig entered a conditional plea of guilty, reserving the right to withdraw his plea if the suppression ruling was in his favor and allowing him to appeal any adverse ruling on his motion to suppress. Adopting the recommendations of the magistrate judge,[3] the district court denied Craig's motion to suppress, holding (1) that the physical evidence was admissible pursuant to the independent source doctrine, and (2) that Craig's statements to Sheriff Johnson were sufficiently attenuated from the warrantless entry into the residence that those statements could not be "fruit of the poisonous tree."  The district court suppressed the statements Craig made while in his residence on the night of the arrest.

At sentencing, the district court held that Craig's two prior Tennessee felony convictions for sexual battery constituted crimes of violence under the Guidelines and that his advisory sentencing Guidelines range was 108 to 135 months.  The district court imposed the statutory maximum of 120 months imprisonment and noted that even if the Guidelines determination was incorrect, "after considering all the statutory factors that apply under 18 United States Code Section 3553(a), I would give him the very same sentence" as Craig was "a very dangerous person" and the 120-month sentence was justified "based on the facts and circumstances of the case, the history and characteristics of the defendant, [and] the need to protect the public from people like Mr. Craig."

---

[3]The Honorable Jon Stuart Scoles, United States Magistrate Judge for the Northern District of Iowa.

## II.

In this appeal, we consider whether the district court erred in (1) denying Craig's motion to suppress the physical evidence seized from his residence, (2) denying his motion to suppress statements he made after he was released from custody, and (3) deciding that his prior convictions from Tennessee for sexual battery constituted crimes of violence under the Guidelines. We address each in turn.

## A.

Craig argues that officers illegally entered his home and that the district court erred in concluding the search warrant that was eventually issued for the residence was an "independent source" for the evidence seized from the residence. "When reviewing a district court's denial of a motion to suppress, we examine for clear error the district court's factual findings, and we review de novo the ultimate question of whether the Fourth Amendment has been violated." United States v. Fuse, 391 F.3d 924, 927 (8th Cir. 2004).

The government does not argue the entry into Craig's home was a valid warrantless entry. See Payton v. New York, 445 U.S. 573, 589-90 (1980) (police may not enter a suspect's home without a warrant in order to effectuate a routine felony arrest). Rather, the government argues that the physical evidence initially discovered during the illegal entry is admissible under the independent source doctrine—that is, the search warrant, absent the taint of the illegal entry, was an independent source for the physical evidence.

As we explained in United States v. Swope:

A warrant obtained after an illegal search is not an independent source if either of the following are true: "if the agents' decision to seek the

-5-

warrant was prompted by what they had seen during the initial entry," and "if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." Murray [v. United States], 487 U.S. [533], 542 [(1988)]. In other words, Murray asks the following two questions, both of which must be answered in the affirmative for the warrant to be an independent source: first, would the police have applied for the warrant had they not acquired the tainted information; and second, do the application affidavits support probable cause after the tainted information has been redacted from them.

542 F.3d 609, 613-14 (8th Cir. 2008), cert. denied, 129 S. Ct. 1018 (2009).

Craig focuses his argument on whether officers would have sought the search warrant had they not observed the firearms and marijuana upon illegally entering Craig's home. Craig argues that the officers testified they would have sought the search warrant only if he had not been at the residence. Thus, according to Craig, the government has not shown that the officers would have applied for the search warrant had they not observed the firearm and marijuana in plain view.

At the suppression hearing, Deputy Winterberg testified that had the officers not been able to gain entry into the home because the occupants refused to open the door or because no one was at the residence, the officers would have applied for a search warrant to gain entry into the residence. Sheriff Johnson also testified that had Deputy Winterberg not been able to obtain entry into the home, he would have directed Deputy Winterberg to seek a search warrant.

In Murray, the Supreme Court stated:

To determine whether the warrant was independent of the illegal entry, one must ask whether it would have been sought even if what actually happened had not occurred—not whether it would have been sought if something else had happened. That is to say, what counts is whether the

-6-

actual illegal search had any effect in producing the warrant, not whether some hypothetical illegal search would have aborted the warrant.

487 U.S. at 542 n.3. The district court found that "Deputy Winterberg would have applied for a warrant had he not acquired the tainted information." This finding is supported by the suppression hearing testimony of Deputy Winterberg and Sheriff Johnson. This testimony is sufficient to support the district court's finding that the physical evidence the officers observed while illegally in the residence did not prompt the officers to obtain the warrant. Thus, the first part of the independent source doctrine is satisfied.

As to the second part of the test, Craig acknowledges that under <u>Swope</u>, we consider "whether the redacted [search warrant] application supports probable cause," 542 F.3d at 616, but he argues that <u>Swope</u> was wrongly decided on this point. He admittedly questions the <u>Swope</u> holding only to preserve that issue. Because one panel of this court may not overturn another, <u>see</u> <u>United States v. Snyder</u>, 511 F.3d 813, 818 (8th Cir.), <u>cert. denied</u>, 554 U.S. 908 (2008), and because Craig concedes that, absent the tainted information, there was probable cause to support the issuance of a search warrant, the second part of the independent source doctrine is satisfied.

B.

Next, Craig argues that the statements he made to Sheriff Johnson the day after his release on bail were inadmissable because he would not have made those statements absent the illegal entry into his residence. "Verbal statements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are items of physical evidence discovered during an illegal search." <u>United States v. Yousif</u>, 308 F.3d 820, 832 (8th Cir. 2002) (citing <u>Wong Sun v. United States</u>, 371 U.S. 471, 485 (1963) ("The Fourth Amendment may protect against the overhearing of verbal statements as well as against the more traditional seizure of 'papers and

effects.'")).  The government does not challenge the district court's conclusion that the officers' entry into Craig's home violated <u>Payton</u>.  However, the Supreme Court held in <u>New York v. Harris</u> that "the rule in <u>Payton</u> was designed to protect the physical integrity of the home; it was not intended to grant criminal suspects . . . protection for statements made outside their premises where the police have probable cause to arrest the suspect for committing a crime."  495 U.S. 14, 17 (1990).  Officers had probable cause to arrest Craig before they entered his residence.  Accordingly, Craig's voluntary statements made to Sheriff Johnson a day after Craig's release on bond are not subject to exclusion, and the district court properly denied the motion to suppress.

C.

Finally, Craig argues that the district court erred in concluding he had two prior crimes of violence under the Guidelines, resulting in a base offense level of 24.  <u>See</u> United States Sentencing Commission, <u>Guidelines Manual</u>, §2K2.1(a)(2).  "We review de novo a district court's finding that a prior conviction constitutes a crime of violence under the Sentencing Guidelines."  <u>United States v. Wilson</u>, 562 F.3d 965, 967 (8th Cir. 2009).

Craig has two prior convictions under Tennessee's sexual battery statute, one of which he claims does not constitute a crime of violence.  The relevant portion of the statute provides:

> (a)  Sexual battery is unlawful sexual contact with a victim by the defendant or the defendant by a victim accompanied by any of the following circumstances:
>
> > (1) Force or coercion is used to accomplish the act;
>
> > (2) The sexual contact is accomplished without the consent of the victim

-8-

and the defendant knows or has reason to know at the time of the contact that the victim did not consent; . . . .

Tenn. Code Ann. § 39-13-505(a)(1)-(2). Here, the physical element requires "sexual contact," which the Tennessee Code defines as:

the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification.

Tenn. Code Ann. § 39-13-501(6). The offense in question violated subsection (a)(2), which Craig describes as the "statute's non-force alternative." Accordingly, he argues that it is not a crime of violence as provided under the Guidelines.

Guidelines section 4B1.2(a) defines a "crime of violence" as

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

See U.S.S.G. §4B1.2(a); see also U.S.S.G. §2K2.1(a)(2), comment. (n.1).

As we have recognized, "[t]he definition of 'crime of violence' in U.S.S.G. §4B1.2(a) is nearly identical to the definition of 'violent felony' in 18 U.S.C. § 924(e)(2)(B), and we treat the two as interchangeable." United States v. Clinkscale,

559 F.3d 815, 817 (8th Cir. 2009). But see United States v. Ross, 613 F.3d 805, 809-10 (8th Cir. 2010) (noting "that the practice of interchanging the two provisions cannot be followed universally" because the Guidelines "include binding commentary that is not applicable to § 924(e)"). To qualify as a "violent felony" or "crime of violence," the offense must have "'as an element the use, attempted use, or threatened use of'" *violent* physical force "'against the person of another,' that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 130 S. Ct. 1265, 1268, 1271 (2010) (quoting 18 U.S.C. § 924(e)(2)(B)). The Tennessee statute criminalizes nonconsensual sexual contact, which may or may not have caused physical pain or injury to another person. Therefore, Craig's conviction of sexual battery section 39-13-505(a)(2) of the Tennessee Code does not meet the definition of "crime of violence" under section 4B1.2(a)(1).

We do find, however, that Craig's sexual battery offense meets the definition of "crime of violence" under section 4B1.2(a)(2). Because Craig's sexual battery offense does not involve "the use, attempted use, or threatened use of physical force against the person of another" and does not constitute "burglary of a dwelling, arson, [] extortion, [or the] use of explosives," we must decide if it is an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. §4B1.2(a). This part of section 4B1.2(a)(2) is often referred to as the "residual" or "otherwise" clause. In Begay v. United States, the Supreme Court set forth the analysis courts should undertake to determine whether a crime falls within the residual clause. 553 U.S. 137 (2008). An offense falls within the residual clause if it first, "otherwise involves conduct that presents a serious potential risk of physical injury to another," U.S.S.G. §4B1.2(a)(2), and second, the offense's statutory definition is "roughly similar, in kind as well as in degree of risk posed, to the [listed offenses] themselves." Begay, 553 U.S. at 143. The Court determined that the residual clause does not include all crimes that pose a serious risk of physical injury to another. Id. at 141-43. "Rather, it covers only crimes that, in addition to posing such a risk, are 'similar' to the ACCA's 'listed examples–burglary, arson, extortion,

or crimes involving explosives' in that they 'typically involve purposeful, violent, and aggressive conduct.'" United States v. Jones, 574 F.3d 546, 550 (8th Cir. 2009) (quoting Begay, 553 U.S. at 142, 144-45).

In addressing this standard, our recent decision in United States v. Hennecke is informative. 590 F.3d 619 (8th Cir.), cert. denied, 131 S. Ct. 78 (2010). There we held that stealing from a person is a crime of violence under the residual clause because it "always poses a risk that the victim of this direct, unlawful contact will detect what is happening, resulting in a violent face-to-face confrontation." Id. at 623; see also United States v. Parks, 620 F.3d 911, 915 (8th Cir. 2010) (holding that when an inmate escapes from a guarded facility he acts with "purposeful, violent, and aggressive behavior" and creates a substantial risk of violent confrontation). As Hennecke demonstrates, while the crime itself may be accomplished without violent physical force, the offense may nevertheless be a "crime of violence" under the residual clause if it creates a substantial risk of a violent confrontation and involves "purposeful, violent, and aggressive behavior."

The sexual battery conviction at issue here requires the intentional touching of the "intimate parts" of a victim for the purpose of sexual gratification without the victim's consent and with knowledge that consent was not given. As to the first part of the test, this offense creates a substantial risk of a violent, face-to-face confrontation should the victim, or another person who would protect the victim, become aware of what is happening. Further, the offense involves the intentional act of touching a person's "intimate parts," and thus the offender's behavior is purposeful and aggressive. Under the residual clause of section 4B1.2(a)(2), Craig's conviction for sexual battery under section 39-13-505(a)(2) of the Tennessee Code constitutes a crime of violence. The district court did not err in reaching the same conclusion.

## III.

We affirm Craig's conviction and sentence.

_____