# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1169

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Marcellus J. Watson, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted: June 16, 2011
Filed: August 16, 2011

_____

Before BYE and MELLOY, Circuit Judges, and SMITH CAMP,[1] District Judge.

_____

MELLOY, Circuit Judge.

Marcellus Watson was convicted of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) and was sentenced to 48 months' imprisonment followed by three years' supervised release. Watson challenges his conviction and his sentence. He argues that the district court[2] erred in denying his

---

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, sitting by designation.

[2]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

motions to exclude certain evidence at trial and in calculating the applicable guideline range at sentencing. For the reasons stated below, we affirm.

## I.

On July 25, 2009, law enforcement officers Jeff Saylor and Jayme Getty were dispatched to Watson's residence in St. Robert, Missouri, based on a report that he was in possession of a firearm. Upon arrival, they encountered Sabrina Williams, who was walking away from the residence. Williams told the officers that Watson had shot at her, but later changed her story to say that he had fired a pistol into the air. Williams also showed the officers a multimedia text message from Watson on her cell phone. The message was a picture of a handgun with the word "BITCH" written under the picture. Saylor and Getty subsequently made contact with Watson and escorted him out of the residence. When they checked Watson for weapons, they found a gun holster on his right hip. Watson was transported to the local police station for questioning, which was videotaped. Afterwards, Watson agreed to return to his residence with Saylor and Getty, an excursion that was also videotaped. He directed the officers to a closet, where they found a 9mm handgun loaded with two rounds of ammunition. The officers also found an empty 9mm casing near the rear door of the residence.

On February 3, 2010, Watson was charged by a one-count indictment with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). A two-day jury trial commenced on September 20, 2010. Prior to trial, Watson filed two motions seeking to exclude certain evidence. The district court denied Watson's first motion, which sought to prohibit Saylor and Getty from testifying about the gun holster they observed on Watson's person and the text message they observed on Williams's cell phone. The district court also denied Watson's second motion insofar as it sought to exclude two videotaped interviews in which Saylor and Getty asked Watson about Williams's allegations that he had

threatened her by shooting at her or firing into the air. Additionally, during trial, Watson objected to the introduction into evidence of a "penitentiary packet" from the state of Oklahoma. The penitentiary packet contained two booking photographs of Watson and two fingerprint cards, which the government used to prove Watson's status as a felon. The district court overruled Watson's objection.

On September 21, 2010, the jury found Watson guilty. His sentencing took place on January 7, 2011. The Pre-Sentence Investigation Report ("PSR") placed Watson in criminal history category III, resulting in a sentencing guideline range of forty-one to fifty-one months. The criminal history score was the result of the assessment of four criminal history points. Watson objected that he should have been assessed only three criminal history points, placing him in criminal history category II. Specifically, Watson objected to the PSR's assessment of one criminal history point under U.S.S.G. § 4A1.1(e) for his 1994 Oklahoma conviction for possession of a firearm while committing a felony. Watson argued that the conviction should not have yielded any criminal history points because it was not a "crime of violence" as defined in U.S.S.G. § 4B1.2(a). The district court overruled Watson's objection, adopted the PSR's guideline calculations, and imposed a guideline sentence of forty-eight months' imprisonment followed by three years' supervised release.

## II.

### A. Evidentiary Rulings

"We review a district court's evidentiary rulings for clear abuse of discretion, reversing only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." United States v. Shields, 497 F.3d 789, 792 (8th Cir. 2007). We review Confrontation Clause objections to the admission of evidence de novo. United States v. Dale, 614 F.3d 942, 955 (8th Cir. 2010).

### (i)  Testimony of Law Enforcement Officers

Watson argues that the district court erred in allowing officers Saylor and Getty to testify that they observed a photograph of a handgun on Williams's cell phone and a handgun holster on Watson's person.  Watson contends that allowing this testimony deprived him of his constitutional right to confrontation because the officers did not seize and preserve as evidence the holster or the cell phone picture, and without these exhibits to use at trial, he could not effectively cross-examine the officers.  According to Watson, the object that Saylor and Getty observed on his person was a cell phone case for his BlackBerry phone, and not a gun holster, and the photo the officers observed on Williams's cell phone was not a photo of the handgun that was later recovered from Watson's residence.

The Supreme Court has recognized that "Confrontation Clause questions will arise" when trial court restrictions on the scope of cross-examination "effectively emasculate the right of cross-examination itself."   Delaware v. Fensterer, 474 U.S. 15, 19 (1985) (per curiam) (internal quotation marks and alteration omitted).  Thus, the Confrontation Clause is violated where, "although some cross-examination of a prosecution witness was allowed, the trial court did not permit defense counsel to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness."  Id. (internal quotation marks omitted).  No such Confrontation Clause violation occurred here, however, "for the trial court did not limit the scope or nature of defense counsel's cross-examination in any way."  Id.  "[T]he cross-examiner is . . . permitted to delve into the witness' story to test the witness' perceptions and memory," and is "allowed to impeach, i.e., discredit, the witness."  Id. at 20 (quoting Davis v. Alaska, 415 U.S. 308, 316 (1974)).  It does not follow that the right to cross-examine is denied when a witness testifying about his observations fails to produce as exhibits the objects about which he is testifying.

"[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." Fensterer, 474 U.S. at 22. At trial, Watson was provided with this opportunity, and he took advantage of it. Defense counsel questioned both officers about their failure to seize or photograph the holster and the cell phone. Additionally, defense counsel elicited testimony from officer Saylor that Watson told him the holster was a BlackBerry case. Defense counsel also questioned Saylor at some length regarding his failure to check whether the handgun recovered inside Watson's residence actually fit in the holster he had observed. Finally, defense counsel interrogated Saylor about the limits of his ability to identify similarities between the handgun in the cell phone picture and the one recovered from Watson's residence. Indeed, on appeal, Watson concedes that he was permitted to put before the jury evidence that, if believed, would have discredited the officers' testimony about the holster and cell phone photograph.

"The main and essential purpose of confrontation is to *secure for the opponent the opportunity of cross-examination*." Id. at 19–20 (internal quotation marks omitted). "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Id. Because Watson had an opportunity to effectively cross-examine both officers, we hold that the admission into evidence of Saylor's and Getty's testimony did not offend the Confrontation Clause.

(ii) Video Recordings

Next, Watson contends that the district court erred in admitting into evidence portions of videotaped interviews in which officers informed Watson that Williams had alleged that he shot at her. Watson contends that this evidence was irrelevant and prejudicial and, therefore, was inadmissible pursuant to Federal Rules of Evidence

-5-

401, 402, and 403. Watson's argument is without merit. "The trial court has broad discretion in determining the relevancy and admissibility of evidence." United States v. Zierke, 618 F.3d 755, 759 (8th Cir. 2010). In this case, Williams's statements to officers that Watson had fired a gun were highly relevant to the task of proving that Watson "possess[ed] . . . [a] firearm or ammunition" in violation of 18 U.S.C. § 922(g)(1). Moreover, "[u]nder Rule 403, great deference is given to a district court's balancing of the relative value of a piece of evidence and its prejudicial effect." Zierke, 618 F.3d at 759. We cannot say that the district court abused its discretion in determining that the challenged evidence was relevant and more probative than prejudicial. In any event, the evidence of Watson's guilt was overwhelming. The government's evidence at trial included video recordings showing Watson making incriminating statements during a custodial interrogation about his having fired a gun and leading police officers to a closet in his residence where he pointed out the handgun at issue in this case. In light of the overwhelming evidence against Watson, we are convinced that any error in admitting the challenged portions of the videotapes would have been harmless. See United States v. Spires, 628 F.3d 1049, 1053 (8th Cir. 2011).

(iii)  Oklahoma Penitentiary Packet

Watson argues that the district court erred in admitting the government's Exhibit 14—the Oklahoma penitentiary packet—because the exhibit was not self-authenticating and, therefore, the admission of the exhibit without calling the custodian of the records to testify violated Watson's right to confront witnesses against him.[3] Pursuant to Federal Rule of Evidence 902, "[e]xtrinsic evidence of authenticity

---

[3]Watson appears to concede that if the records contained in the penitentiary packet *are* self-authenticating, then the Confrontation Clause is not implicated. We agree. See United States v. Weiland, 420 F.3d 1062, 1076–77 (9th Cir. 2005) (concluding that both the documents in an Oklahoma "penitentiary packet" and the certifications by the records custodian and the Secretary of State were non-testimonial

as a condition precedent to admissibility is not required with respect to . . . [a] copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification . . . ." Fed. R. Evid. 902(4); <u>see also</u> <u>United States v. McIntosh</u>, 200 F.3d 1168, 1169 (8th Cir. 2000) (per curiam) ("When an authorized person certifies facts in public records, the records are admissible under Federal Rules of Evidence 803(8) and 902(4).").

Here, the penitentiary packet was authenticated by a certificate which stated:

> I, KEVIN E. MOORE, hereby certify: I am the coordinator of the Offender Records Unit of the Oklahoma Department of Corrections, the agency having jurisdiction over all adult corrections facilities of the state of Oklahoma; that in my legal custody as such officer are the original files and records of persons heretofore committed to the Department of Corrections; that the 1) fingerprint card, 2) photograph, and 3) commitment documents attached are copies of the original records of persons heretofore committed to the said Department of Corrections, and who served a term of incarceration/supervision therein; that I have compared the foregoing and attached copies with their respective originals now on file in my office and each thereof contains and is a full, true, and correct copy from its said original.

Watson contends that this certificate is "so vague, internally contradictory, and confusing" that the exhibit failed to be self-authenticating. Specifically, Watson

---

in nature, and that admission of these non-testimonial records did not violate the Confrontation Clause "because the hearsay exception for public records and their certifying documents is firmly rooted"); <u>see also</u> <u>White v. Illinois</u>, 502 U.S. 346, 356 (1992) ("[W]here proffered hearsay has sufficient guarantees of reliability to come within a firmly rooted exception to the hearsay rule, the Confrontation Clause is satisfied.").

argues that the certificate is inadequate because it fails to identify that the attached records relate to Marcellus J. Watson and because it purports to certify the authenticity of one fingerprint card and one photograph of Watson when, in fact, two fingerprint cards and two photographs were attached.

Watson's arguments are specious. The photographs of Watson and his fingerprint cards fall within the self-authentication provisions of Rule 902. As an initial matter, the Secretary of State of the State of Oklahoma certified under seal, pursuant to Rule 902(2), that Moore was authorized to execute the certificate and that Moore's signature was genuine. Further, pursuant to Rule 902(4), the records were certified as correct by Moore, who also stated that he was the legal custodian of the records and that he had compared the certified copies to their originals. "This suffices to establish that the records were what they purported to be, fulfilling the purpose of our inquiry into the authentication of the documents in the 'penitentiary packet.'" United States v. Weiland, 420 F.3d 1062, 1073 (9th Cir. 2005); Fed. R. Evid. 901(a) ("The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.").

The records themselves identified Watson by name, date of birth, and Social Security number. There is no reason that the certificate needed to reproduce the information contained within the records whose authenticity it established. Further, the certificate was sufficient to authenticate both fingerprint cards and both photographs contained in the penitentiary packet even though the certificate refers to the "fingerprint card" and "photograph" in the singular. The certificate made clear that Moore was certifying all of the documents to which the certificate was attached, and the insignificant discrepancy between the certificate's description and the actual contents of the packet was not so great as to give a reasonable person any doubt as to the authenticity of the exhibit. Rule 902 does not require more than the government provided here. Cf. United States v. Aikins, 946 F.2d 608, 614 (9th Cir. 1990)

(explaining that Rule 902 relies on "the probable trustworthiness of the public officer's statement," and its concern is to avoid "the great inconvenience that would be caused to public business if public officers had to be called to court to verify in person every fact they certify").

If Watson believed the information contained in the penitentiary packet was incorrect, he "was entitled to present evidence to show the certified state court document was incorrect." McIntosh, 200 F.3d at 1169. He did not do so, however, and the fact that rebuttal evidence may exist does not preclude the records from being self-authenticating. Id.; see also United States v. Bisbee, 245 F.3d 1001, 1007 (8th Cir. 2001) ("That [the defendant] presented evidence tending to contradict the facts in the [public documents admitted pursuant to Fed. R. Evid. 902] does not render the properly admitted evidence inadmissible."). Accordingly, we affirm the district court's finding that the records contained in the penitentiary packet were admissible as self-authenticating public records under Rule 902(4).

## B. Guidelines Calculation

Finally, Watson argues that the district court erred in assessing one criminal history point for Watson's Oklahoma conviction for possessing a firearm while committing a felony.[4] Specifically, Watson challenges the district court's determination that his prior conviction was a "crime of violence" under U.S.S.G. § 4A1.1(e). "We review de novo a district court's finding that a prior conviction constitutes a crime of violence under the Sentencing Guidelines." United States v. Craig, 630 F.3d 717, 723 (8th Cir. 2011) (internal quotation marks omitted).

---

[4]Absent this criminal history point, Watson's criminal history category would have been category II rather than category III.

Section 4A1.1(e) directs the sentencing court to "[a]dd [one criminal history] point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under [§ 4A1.1] (a), (b), or (c)." Section 4A1.1(e) does not itself define the term "crime of violence," but Application Note 5 of the commentary to this section states, "For purposes of this guideline, 'crime of violence' has the meaning given that term in § 4B1.2(a)." Section 4B1.2(a), in turn, provides:

> The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that–
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Here, the offense of conviction provides that, "Any person who, while committing or attempting to commit a felony, possesses a pistol, shotgun or rifle or any other offensive weapon in such commission or attempt . . . in addition to the penalty provided by statute for the felony committed or attempted, upon conviction shall be guilty of a felony for possessing such weapon or device, which shall be a separate offense from the felony committed or attempted." 21 Okl. St. § 1287. It is undisputed that Watson's conviction under 21 Okl. St. § 1287 was for possessing a pistol while committing the crime of possession of cocaine with intent to distribute,

which is a felony under 63 Okl. Stat. 2-401(A)(1).[5]  Therefore, our focus is on the crime of possessing a firearm while committing a drug trafficking offense.

Because this crime does not involve "the use, attempted use, or threatened use of physical force against the person of another" and does not constitute "burglary of a dwelling, arson, . . . extortion, [or the] . . . use of explosives," § 4B1.2(a), we must decide whether it qualifies under the "residual clause" of § 4B1.2(a)(2).  Craig, 630 F.3d at 724.  To qualify as a crime of violence under the residual clause, Watson's prior conviction must (1) "present[] a serious potential risk of physical injury to another," and (2) be "roughly similar, in kind as well as degree of risk posed," to the offenses listed in § 4B1.2(a)(2).[6]  United States v. Boyce, 633 F.3d 708, 711 (8th Cir.

---

[5]This is also clear from the charging document, which we are permitted to examine under the modified categorical approach.  "Under [the categorical] approach, the sentencing court is 'generally prohibit[ed] . . . from delving into particular facts disclosed by the record of conviction, thus leaving the court normally to look only to the fact of conviction and the statutory definition of the prior offense.'"  United States v. Vinton, 631 F.3d 476, 484 (8th Cir. 2011) (quoting Shepard v. United States, 544 U.S. 13, 17 (2005)).  However, "[w]hen the law defines an offense by proscribing several discrete, alternative sets of elements that might be shown as different manners of committing the offense, we employ the modified categorical approach that permits examination of a limited class of materials to determine which set of elements the defendant was found to have violated."  United States v. Vincent, 575 F.3d 820, 824 (8th Cir. 2009) (internal quotation marks omitted).  "This class of materials includes the 'charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented.'"  Id. (quoting Shepard, 544 U.S. at 16).

[6]For present purposes, we treat authority interpreting the term "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), as applicable in interpreting the similarly defined term "crime of violence" from U.S.S.G. § 4B1.2(a).  See Vinton, 631 F.3d at 484; Craig, 630 F.3d at 723 ("As we have recognized, the definition of 'crime of violence' in U.S.S.G. § 4B1.2(a) is nearly identical to the definition of 'violent felony' in 18 U.S.C. § 924(e)(2)(B), and we treat the two as interchangeable." (internal quotation marks omitted)).  But see United

2011); see also United States v. Begay, 553 U.S. 137, 142–43 (2008). "[A] crime involves the requisite risk when the risk posed by the crime in question is comparable to that posed by its closest analog among the enumerated offenses." Sykes v. United States, 131 S. Ct. 2267, 2273 (2011) (explaining that the crime of vehicle flight from a law enforcement officer after an order to stop poses risks akin to that of arson and burglary) (internal quotation marks and alteration omitted).

We conclude that possession of a firearm while committing a drug trafficking offense presents a serious potential risk of physical injury to another, and that such risk is similar, in kind as well as degree of risk posed, to the enumerated offenses. We have previously recognized that "[t]he likelihood of violence greatly increases when a firearm is present in connection with illegal drug possession." United States v. Linson, 276 F.3d 1017, 1019 (8th Cir. 2002); see also United States v. Ruiz, 412 F.3d 871, 881 (8th Cir. 2005) ("[T]here is a close and well known connection between firearms and drugs. Firearms are tools of the drug trade due to the dangers inherent in that line of work." (internal citation omitted)). The crime of possessing a firearm while committing a drug trafficking offense will not always result in a violent confrontation. However, we think that the crime creates a risk of violent confrontation that is at least as substantial as the risk created by the enumerated crime of burglary. Accord United States v. Fife, 624 F.3d 441, 447–48 (7th Cir. 2010) ("Given the well-established connection between violent crime and the illegal drug trade, the possession of a weapon while dealing cocaine presents a serious potential risk of physical injury that is certainly similar to, if not substantially greater than, the enumerated crimes of burglary, arson, extortion, or crimes involving the use of explosives."); cf. Craig, 630 F.3d at 724 ("[W]hile the crime itself may be accomplished without violent physical force, the offense may nevertheless be a crime

States v. Ross, 613 F.3d 805, 809–10 (8th Cir. 2010) (noting "that the practice of interchanging the two provisions cannot be followed universally" because the Sentencing Guidelines "include binding commentary that is not applicable to § 924(e)").

of violence under the residual clause if it creates a substantial risk of a violent confrontation and involves purposeful, violent, and aggressive behavior" (internal quotation marks omitted)); United States v. Hennecke, 590 F.3d 619, 623 (8th Cir. 2010) (holding that stealing from a person is a crime of violence under the residual clause because it "poses the same risk of violent confrontation with the victim or a third person as attempted or completed burglary"); United States v. Parks, 620 F.3d 911, 915 (8th Cir. 2010) ("The enumerated crime of burglary can be accomplished without purposeful violence, but it is a crime of violence because the offender purposefully and aggressively creates a substantial *risk* of violent confrontation.").

Watson contends that, under Begay, the prior offense cannot be similar in kind to the enumerated offenses unless it involves "purposeful, violent, and aggressive conduct." However, as the Supreme Court recently explained in Sykes, Watson's position overreads the Court's opinion in Begay. 131 S. Ct. at 2275. "The phrase 'purposeful, violent, and aggressive' has no precise textual link to the residual clause," which requires only that the prior offense "otherwise involv[e] conduct that presents a serious potential risk of physical injury to another." Id. (quoting § 924(e)(2)(B)(ii)). Thus, provided the felony at issue is not "akin to strict liability, negligence, or recklessness crimes," it qualifies as a crime of violence under the residual clause if it is, "as a categorical matter, similar in risk to the listed crimes." Id. at 2275–76. That is the case here. Like burglary, carrying a firearm while committing a drug trafficking offense is dangerous because it can end in confrontation leading to violence. See id. at 2273. "Firearms are the tools of the drug trade providing protection and intimidation." Linson, 276 F.3d at 1019. When a drug dealer carries a firearm, "that behavior indicates that he is prepared to use violence if necessary and is ready to enter into conflict, which in turn creates a danger for those surrounding [him]." Boyce, 633 F.3d at 712 (internal quotation marks omitted).

Possession of a firearm while committing a drug trafficking offense is similar, in kind as well as degree of risk posed, to the offenses listed in § 4B1.2(a)(2).

-13-

Watson's Oklahoma conviction is a crime of violence under the residual clause of § 4B1.2(a)(2). Consequently, the district court did not err in calculating Watson's criminal history category.

## III. Conclusion

Accordingly, we affirm the decision of the district court.

_____