# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-2436
_____

United States of America

*Plaintiff - Appellee*

v.

Ryan William McMillan

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: April 7, 2017
Filed: July 24, 2017

_____

Before GRUENDER, MURPHY, and KELLY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Ryan William McMillan pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The district court sentenced him to 84 months imprisonment based in part on its determination that his prior conviction for third degree riot was a crime of violence under the sentencing guidelines. McMillan appeals, and we vacate his sentence and remand for resentencing.

## I.

McMillan pled guilty to being a felon in possession of a firearm in November 2015. The presentence investigation report recommended a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2) because McMillan had committed the current offense after felony convictions for a controlled substance offense and a crime of violence, specifically a 2009 Minnesota conviction for third degree riot. See Minn. Stat. § 609.71, subd. 3 (2009). McMillan objected to the presentence report's determination that his conviction for third degree riot qualified as a crime of violence.

At McMillan's May 2016 sentencing hearing, the district court overruled McMillan's objection and determined that his third degree riot conviction qualified as a crime of violence because it had "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). After deciding that McMillan's base offense level was 24, and adjusting his offense level, the court calculated an advisory guideline range of 92 to 115 months and sentenced McMillan to 84 months. McMillan appeals, arguing that the district court erred by overruling his objection that his prior conviction for third degree riot does not qualify as a crime of violence.

## II.

We review de novo whether a conviction qualifies as a crime of violence. United States v. Rice, 813 F.3d 704, 705 (8th Cir. 2016). Section 2K2.1 of the guidelines provides that courts should apply a base offense level of 24 for a conviction of unlawful possession of a firearm if, among other factors, the defendant had previously "sustain[ed] at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2). A "crime of violence" is any federal or state offense punishable by more than one year imprisonment that either: "(1) has as an element the use, attempted use, or threatened

use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a) (2015).[1] Subsection one contains the force clause and subsection two contains the enumerated and residual clauses. See United States v. Jordan, 812 F.3d 1183, 1185 (8th Cir. 2016).[2]

## III.

McMillan argues that the district court erred by concluding that his prior conviction for third degree riot qualifies as a crime of violence under the force clause. To determine whether a prior conviction qualifies as a predicate offense under the force clause, "we apply a categorical approach, looking to the elements of the offense as defined in the . . . statute of conviction rather than to the facts underlying the defendant's prior conviction." Rice, 813 F.3d at 705 (quoting United States v. Dawn, 685 F.3d 790, 794 (8th Cir. 2012)) (alteration in Dawn). If the statute of conviction is divisible, however, "in that it encompasses multiple crimes, some of which are crimes of violence and some of which are not, we apply a modified categorical approach to 'look at the charging document, plea colloquy, and comparable judicial records' for determining which part of the statute the defendant violated." Id.

---

[1]Because the district court is required to apply the guidelines in effect on the date of sentencing, see United States v. Lawin, 779 F.3d 780, 781 (8th Cir. 2015) (per curiam), we analyze McMillan's sentence under the 2015 guidelines which became effective on November 1, 2015.

[2]Although Jordan analyzes the Armed Career Criminal Act, not the guidelines, the definition of "crime of violence" in U.S.S.G. § 4B1.2(a) (2015) was "nearly identical to the definition of 'violent felony' in 18 U.S.C. § 924(e)(2)(B)," and we see no reason to treat them differently here. United States v. Craig, 630 F.3d 717, 723 (8th Cir. 2011) (quoting United States v. Clinkscale, 559 F.3d 815, 817 (8th Cir. 2009)).

(quoting Dawn, 685 F.3d at 794–95).  "We then determine whether a violation of that statutory subpart is a crime of violence."  Id.

Minnesota's riot statute states: "When three or more persons assembled disturb the public peace by an intentional act or threat of unlawful force or violence to person or property, each participant therein is guilty of riot third degree . . . ."  Minn. Stat. § 609.71, subd. 3 (2009).  Because a prior conviction only qualifies as a crime of violence under the force clause if it "has as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1) (2015) (emphasis added), we must determine whether we may use the modified categorical approach to analyze whether McMillan was convicted of using or threatening force against a "person or property" under Minn. Stat. § 609.71, subd. 3 (2009).

We may only apply the modified categorical approach to statutes that are divisible.  See United States v. Headbird, 832 F.3d 844, 846 (8th Cir. 2016).  To determine whether Minnesota's third degree riot statute is divisible, we ascertain "which words or phrases in the statute are elements of the crime," as opposed to the means, or specific facts, of satisfying these elements.  Id. at 847–48.  A list of alternative elements is divisible, but a list of alternative means is not.  See Mathis v. United States, 136 S. Ct. 2243, 2256 (2016).

The elements of a crime "are what the jury must find beyond a reasonable doubt to convict the defendant; and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty."  Mathis, 136 S. Ct. at 2248 (citation omitted).  The facts underlying a prior conviction, however, are "mere real-world things—extraneous to the crime's legal requirements."  Id.

When analyzing which words or phrases of a statute form the elements of a crime, courts may look to the statute of prior conviction,  state court decisions, and,

-4-

as a last resort, "the record of a prior conviction itself." Mathis, 136 S. Ct. at 2256. The text of Minnesota's third degree riot statute "does not provide helpful guidance" as to whether the phrase "person or property" lists alternative means or alternative elements because "there is, for example, a uniform punishment for commission of" third degree riot. See United States v. McArthur, 850 F.3d 925, 938 (8th Cir. 2017).

The relevant state court decisions suggest that the phrase "person or property" lists alternative means, not alternative elements. Two Minnesota appellate court decisions indicate that to convict a defendant of a riot offense, the state must prove that: "(1) [the defendant] was one of 'three or more persons assembled'; [and] (2) the assembly 'disturb[ed] the public peace by an intentional act or threat of unlawful force or violence to person or property.'" State v. Witherspoon, 2013 WL 3284272, at *2 (Minn. Ct. App. July 1, 2013) (unpublished) (quoting Minn. Stat. § 609.71, subd. 2, which is materially identical to Minn. Stat. § 609.71, subd. 3 (2009)); see also State v. Winkels, 283 N.W. 763, 764 (Minn. 1939) (analyzing 2 Mason Minn. St. 1927, § 10280, which is materially identical to Minn. Stat. § 609.71, subd. 3 (2009)). That statement of the second element of a riot offense suggests that a jury is not required to agree unanimously on whether a "person or property" was affected by the crime and therefore indicates that they are alternative means, not elements. See McArthur, 850 F.3d at 938.

Moreover, in Witherspoon the Minnesota Court of Appeals stated that the state had proven the second element of the riot statute by introducing evidence that one of the persons in the assembly "fired a handgun from a vehicle in a public place." 2013 WL 3284272, at *3 (citing Winkels, 283 N.W. at 764). By concluding that the state need only provide evidence that a defendant fired a weapon in a public place to satisfy the "person or property" element, the Minnesota Court of Appeals indicated that a jury need not unanimously agree on whether a "person or property" was the object of the offense. We see no reason why the Minnesota Supreme Court would

disagree with the analysis in <u>Witherspoon</u>. <u>See</u> <u>Blankenship v. USA Truck, Inc.</u>, 601 F.3d 852, 856 (8th Cir. 2010).

We may use a state's model jury instructions to "reinforce" our interpretation of the means or elements inquiry. <u>See</u> <u>United States v. Lamb</u>, 847 F.3d 928, 932 (8th Cir. 2017). The Minnesota model jury instructions also support the conclusion that the phrase "person or property" is a list of alternative means. The model instructions list the first two elements of third degree riot as:

> First, the defendant was one of three or more persons assembled together.
> Second, those assembled disturbed the public peace by an intentional act or threat of unlawful force or violence to person or property.

Minnesota Jury Instruction Guides-Criminal (CRIMJIG) § 13.117. The model jury instructions, like <u>Winkels</u> and <u>Witherspoon</u>, suggest that a jury would not have to agree unanimously on whether a "person or property" was the object of the public peace disturbance to convict a defendant of a riot offense.

The government argues that the phrase "person or property" is a list of alternative elements because the disjunctive "or" separates "person" from "property." As <u>Mathis</u> recognizes, however, the use of the word "or" in a statute merely signals that we must determine whether the alternatives are elements or means; it is not determinative one way or another. <u>See</u> 136 S. Ct. at 2248–49. Indeed, we have concluded elsewhere that a list of alternatives was a list of means even though the statute used the word "or" between the alternatives. <u>E.g.</u>, <u>McArthur</u>, 850 F.3d at 937–38.

We conclude that the phrase "person or property" lists two alternative means of committing the second element of the Minnesota third degree riot statute, Minn. Stat. § 609.71, subd. 3. The phrase "person or property" therefore is not divisible and

we may not apply the modified categorical approach to determine under which alternative McMillan was convicted. McMillan's prior conviction for third degree riot thus does not categorically qualify as a crime of violence under the force clause because the statute encompasses crimes against property. See U.S.S.G. § 4B1.2(a)(1). For these reasons, the district court erred by concluding that McMillan's third degree riot conviction is a crime of violence under the force clause.

IV.

The government argues that even if McMillan's third degree riot conviction does not qualify as a crime of violence under the force clause of U.S.S.G. § 4B1.2(a), the district court's error was harmless because his riot conviction qualifies under the residual clause. At the time of McMillan's sentencing, U.S.S.G. § 4B1.2(a) defined "crime of violence" to include crimes that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." In 2015 the Supreme Court held that an identically worded residual clause in the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague. Johnson v. United States, 135 S. Ct. 2551 (2015). In 2017, however, the Court held that the residual clause in U.S.S.G. § 4B1.2(a)(2) is not unconstitutionally vague because "the advisory Guidelines are not subject to vagueness challenges under the Due Process Clause." Beckles v. United States, 137 S. Ct. 886, 890 (2017).

Nevertheless, on January 8, 2016 the sentencing commission announced that it had unanimously voted to eliminate the residual clause from U.S.S.G. § 4B1.2(a)(2). See U.S. Sentencing Commission Adopts Amendment to Definition of "Crime of Violence" in Federal Sentencing Guidelines and Proposes Additional Amendments (Jan. 8, 2016), http://www.ussc.gov/about/news/press-releases/january -8-2016. The amendment became effective on August 1, 2016. U.S.S.G. app. C, amend. 798.

Although district courts are required to apply the guidelines in effect on the date of sentencing, they may consider pending amendments to the guidelines. See Lawin, 779 F.3d at 781. Because McMillan was sentenced in May 2016, the court was required to apply the 2015 version of U.S.S.G. § 4B1.2(a) which included the residual clause. While it would have been permissible for the district court to consider the Sentencing Commission's proposed elimination of that clause, it did not reach this issue because both parties had solely analyzed whether McMillan's prior conviction for third degree riot qualified as a "crime of violence" under the force clause.

We have often noted that "[w]hen it would be beneficial for the district court to consider an alternative argument in the first instance, we may remand the matter to the district court." Tovar v. Essentia Health, 857 F.3d 771, 779 (8th Cir. 2017) (quoting Loftness Specialized Farm Equip., Inc. v. Twiestmeyer, 742 F.3d 845, 851 (8th Cir. 2014)). We conclude that this is the situation here, and we therefore remand for the district court to determine in the first instance whether McMillan's prior conviction qualifies as a "crime of violence" under the residual clause and, if so, whether the district court should consider the proposed amendment to U.S.S.G. § 4B1.2(a)(2).

V.

For these reasons McMillan's sentence is vacated, and the case remanded for resentencing consistent with this opinion.

GRUENDER, Circuit Judge, dissenting.

I agree that the district court erred in concluding that McMillan's conviction of third degree riot for the benefit of a gang qualifies as a crime of violence under the force clause of United States Sentencing Guidelines § 4B1.2(a)(1), and accordingly, I join sections I through III of the court's opinion. However, I respectfully dissent from the court's decision to vacate and remand for resentencing. Instead, I would follow our approach in *United States v. Benedict* and affirm on the alternative basis that McMillan's riot conviction qualifies as a crime of violence under the residual clause. *See* 855 F.3d 880, 890 (8th Cir. 2017) (affirming career-offender enhancements under § 4B1.2(a)'s residual clause after *en banc* court vacated original panel opinion based on the enumerated-offenses clause); *see also United States v. Snyder*, 852 F.3d 972, 973 (10th Cir. 2017) (affirming application of career-offender enhancement based on the enumerated-offenses clause on the alternative basis of the residual clause).

In June 2009, McMillan and six of his cohorts from the East Side Boyz street gang squared off against members of the rival Selby Side gang in the parking lot of a local gas station. Shortly thereafter, McMillan and his crew crossed into Selby Side territory, located a member of the gang, and fatally shot him in the head. McMillan pleaded guilty to third degree riot for the benefit of a gang for his role in the murder. *See* Minn. Stat. §§ 609.71(3), 609.229(3)(c). Several years later, police officers in Minneapolis, Minnesota conducted a routine traffic stop of a vehicle that McMillan was driving. During the stop, the officers detected an odor of marijuana, searched the car, and found a Glock 19 handgun with a laser sight hidden in the driver's seat cushion. Police subsequently learned that the gun had been stolen. Based on his prior convictions for third degree riot and two other felonies involving controlled substances, a federal grand jury indicted McMillan on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). McMillan appeals his

resulting sentencing, challenging only the district court's determination that his third degree riot conviction qualified as a crime of violence under U.S.S.G. § 4B1.2(a).

As the court notes, we review *de novo* whether a conviction qualifies as a crime of violence. *United States v. Rice*, 813 F.3d 704, 705 (8th Cir. 2016) (citation omitted). "It is, however, well established that we may affirm a sentence on any grounds supported by the record . . . ." *United States v. Goings*, 200 F.3d 539, 544 (8th Cir. 2000) (citation omitted). Given that, upon remand, the district court will be compelled to "follow the firmly-established principle [of] apply[ing] the Sentencing Guidelines in effect at the time of sentencing," *United States v. Lawin*, 779 F.3d 780, 781 (8th Cir. 2015) (per curiam) (citation omitted); *see also* 18 U.S.C. § 3742(g) ("A district court to which a case is remanded . . . shall apply the guidelines . . . that were in effect on the date of the previous sentencing of the defendant prior to the appeal, together with any amendments thereto by any act of Congress that was in effect on such date . . . ."), and because the determination of whether a conviction constitutes a crime of violence is a question of law under the categorical approach, I would resolve whether McMillan's riot conviction nonetheless qualifies as a crime of violence under the guidelines' residual clause rather than remanding.

As we explained in *Benedict*, "To determine whether an offense qualifies as a crime of violence under the residual clause, we use the 'categorical approach,' which requires us to consider whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." 855 F.3d at 889 (quotation omitted). Applying this framework, I would decide whether McMillan's riot conviction: "(1) present[s] a serious potential risk of physical injury to another, and (2) [is] roughly similar, in kind as well as degree of risk posed, to the offenses listed in § 4B1.2(a)(2)." *United States v. Watson*, 650 F.3d 1084, 1092 (8th Cir. 2011) (citation and internal quotation marks omitted). "[A] crime involves the requisite risk when the risk posed by the

-10-

crime in question is comparable to that posed by its closest analog among the enumerated offenses." *Id.* (citation omitted).

In Minnesota, third degree riot is a gross misdemeanor committed "[w]hen three or more persons assembled disturb the public peace by an intentional act or threat of unlawful force or violence to person or property." Minn. Stat. § 609.71(3). However, Minnesota elevates this offense to a felony punishable by up to three years' imprisonment when it is committed for the benefit of a gang, which, in turn, requires the State to prove both that the crime benefitted a gang and that the gang is involved in sufficiently deviant behavior to qualify as a "criminal gang." *Id.* § 609.229. I believe that the Minnesota offense of third degree riot for the benefit of a gang presents a serious potential risk of physical injury to another and that such a risk is similar, in kind as well as degree of risk posed, to the offenses enumerated in § 4B1.2(a)(2). *See Watson*, 650 F.3d at 1092.

As to the first part of the test, we explained in *United States v. Craig* that even if "the crime itself may be accomplished without violent physical force, the offense may nevertheless be a crime of violence under the residual clause if it creates a substantial risk of a violent confrontation and [typically] involves purposeful, violent, and aggressive behavior." 630 F.3d 717, 724 (8th Cir. 2011) (quotation omitted). Specifically, *Craig* held that Tennessee sexual battery was a crime of violence because the offense inherently "creates a substantial risk of a violent, face-to-face confrontation should the victim, or another person . . . become aware of what is happening." *See id.* at 725. A similar risk of confrontation inheres when an assembled group of three or more gang members engages in an act or threat of unlawful force or violence sufficient to disturb the public peace. For example, it is not difficult to imagine such force, even when directed at property rather than people, leading to violence between the gang and a local business owner, an innocent bystander, an overzealous recruit of the neighborhood watch, or, most likely,

members of a rival gang. Likewise, given the offense's dual requirements that the force itself must cause the disturbance of the peace and that it be employed for the benefit of a gang, the offender's behavior is by definition purposeful and aggressive. *See id.* As to the second part of the test, while third degree riot for the benefit of a gang will not always result in a violent confrontation, there is little question that the crime creates a risk of violence at least as substantial as the risk created by the enumerated offense of burglary. *Accord United States v. Hennecke*, 590 F.3d 619, 623 (8th Cir.2010) (holding that stealing from a person is a crime of violence under the residual clause because it "poses the same risk of violent confrontation with the victim or a third person as attempted or completed burglary"); *Watson*, 650 F.3d at 1093 (finding same for possession of a firearm while committing a drug trafficking offense and noting that, although "[t]he enumerated crime of burglary can be accomplished without purposeful violence . . . it is a crime of violence because the offender purposefully and aggressively creates a substantial risk of violent confrontation." (quotation omitted)); *United States v. Hudson*, 577 F.3d 883, 885-86 (8th Cir. 2009) (finding same for Missouri offense of resisting arrest by fleeing). On a final note, while not dispositive, the fact that Minnesota classifies even ordinary riot as a crime of violence only serves to confirm that the offense qualifies under the definition set out in the guidelines. *See* Minn. Stat. § 624.712(5).

In his supplemental brief, McMillan resists the application of the residual clause for two main reasons. First, he contends that the Supreme Court's decision in *Beckles v. United States* upholding the guidelines' residual clause, 137 S. Ct. 886, 890 (2017), does not undermine its prior opinion in *Johnson v. United States*, which struck down the identically worded residual clause of the Armed Career Criminal Act ("ACCA") as unconstitutionally vague, 135 S. Ct. 2551, 2563 (2015). Specifically, he argues, "Just because a guideline cannot be unconstitutionally vague is no guarantee that courts can know what it means and interpret it in a principled and consistent fashion." Accordingly, McMillan suggests that it would constitute

"procedural error and an abuse of discretion to calculate the guideline range based on an attempt to interpret the residual clause." This argument is unavailing, given that *Beckles* itself affirmed the dismissal of a postconviction motion to vacate a sentence based on the guidelines residual clause. 137 S. Ct. at 891. Moreover, in *Benedict*, we affirmed a crime-of-violence determination based on the residual clause, thereby foreclosing McMillan's interpretation of *Beckles*.[3] *See* 855 F.3d at 888-90.

Alternatively, McMillan urges that, even if the guidelines' residual clause remains valid, his riot conviction does not qualify as a crime of violence under it. In advancing this position, McMillan offers three hypothetical examples of nonviolent property crimes that, at most, would qualify as ordinary third degree riot, rather than the felony version of the offense committed for the benefit of a gang. These three hypotheticals involve groups of individuals waking up neighbors by throwing rocks at store windows, tagging businesses with graffiti, or keying cars. Even assuming that such conduct would satisfy the elements of a Minnesota riot conviction, however, these examples are insufficient to preclude the application of the residual clause. As we have previously cautioned, "the categorical approach is not an invitation to apply legal imagination to the state offense; there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to [hypothetical]

---

[3]McMillan's related argument—that, "when interpreting the [guidelines] residual clause, [courts] cannot rely on decisions expressly or implicitly overruled by the [Supreme] Court in *Johnson*"—likewise fails under *Benedict*. *See* 855 F.3d at 889 (relying on *James v. United States*, 550 U.S. 192 (2007), and other ACCA residual clause cases invalidated by *Johnson* because these cases remain applicable in interpreting the guidelines' residual clause); *accord United States v. Cooper*, No. 15-11546, 2017 WL 1487224, at *5 n.3 (11th Cir. April 26, 2017) (unpublished) ("Although *Johnson* invalidated [the residual] clause as unconstitutionally vague, [the] reasoning [of an ACCA case concerning the same offense] still applies here because we are interpreting 'nearly identical language' in the Sentencing Guidelines, which are not subject [to] vagueness challenges." (citations omitted)).

-13-

conduct . . . ." *United States v. Roblero-Ramirez*, 716 F.3d 1122, 1126 (8th Cir. 2013) (quotations and citations omitted). In this vein, the Government notes that McMillan's hypotheticals do not comport with "the ordinary case" based on Minnesota's history of prosecuting this offense. *See United States v. Pate*, 754 F.3d 550, 555 (8th Cir. 2014) (holding vehicular flight qualifies under the ACCA residual clause and rejecting argument that someone could be convicted "without any risk of injury by 'pulling over, parking safely, and extinguishing [the car's] lights,'" where the defendant "cite[d] no example of anyone prosecuted for this hypothetical violation, and [where this court's] review of Minnesota cases reveal[ed] none"). Aside from McMillan's conviction, there appear to have been only two relevant prosecutions of riot for the benefit of a gang; one was a juvenile adjudication involving a physical altercation between rival gangs, *see In re Welfare of A.E.*, No. C4-00-717, 2000 WL 1809065, at *1 (Minn. Ct. App. Dec. 12, 2000), and the other was a second degree conviction for firing a handgun out of the window of a vehicle, *see State v. Witherspoon*, No. A12–1247, 2013 WL 3284272, at *1 (Minn. Ct. App. July 1, 2013). Thus, a review of Minnesota cases defeats McMillan's second argument and further confirms that his riot conviction qualifies as a crime of violence.

The court is correct that it would have been permissible for the district court to have considered the Sentencing Commission's then-pending amendment deleting the residual clause from § 4B1.2(a) had it reached this issue originally. *See Lawin*, 779 F.3d at 781. However, on remand, the court first should conclude, as a matter of law, that the conviction qualified as a crime of violence under the residual clause per the above analysis. Thus, McMillan's total offense level will remain the same. I cannot see how a Sentencing Commission's rule change—based at least in part on the widespread but ultimately incorrect assumption that *Johnson* invalidated the guidelines' residual clause—could affect the district court's views on the appropriateness of the sentence imposed. Thus, I do not agree that this is a situation where "it would be beneficial for the district court to consider an alternative argument

in the first instance," *see Tovar v. Essentia Health*, 857 F.3d 771, 779 (8th Cir. 2017) (quotation omitted), and instead believe that a remand will serve only to waste the district court's valuable time.  Accordingly, I would affirm the sentence.

_____