# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 15-3718

———————————————

United States of America

*Plaintiff - Appellee*

v.

Christopher Harrison Headbird

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Minnesota - St. Paul

——————————

Submitted: June 16, 2016
Filed: August 9, 2016

——————————

Before MURPHY, BRIGHT, and SHEPHERD, Circuit Judges.

——————————

MURPHY, Circuit Judge.

Christopher Headbird pled guilty to being a felon in possession of a firearm. The district court determined that Headbird had three prior violent felony convictions and sentenced him to 235 months imprisonment under the Armed Career Criminal Act (ACCA). Headbird appeals, contending that his juvenile adjudication for second degree assault, Minn. Stat. § 609.222, subd. 1, does not qualify as an ACCA predicate offense. We vacate Headbird's sentence and remand for resentencing.

## I.

On August 19, 2014 the Leech Lake Tribal Police responded to a call from Headbird's aunt reporting that he had threatened and hit her. When the police arrived, Headbird took his girlfriend hostage inside a house. He eventually surrendered, however, and handed his shotgun to the police. Headbird was subsequently indicted with one count of being a felon in possession of a firearm to which he pled guilty. See 18 U.S.C. §§ 922(g)(1), 924(e). At sentencing the district court determined that Headbird had two prior convictions for aggravated robbery and a prior juvenile adjudication for assault, all of which qualified as ACCA predicate offenses. The court then sentenced Headbird to 235 months imprisonment, and Headbird appeals.

## II.

Headbird contends his juvenile adjudication for Minnesota second degree assault does not qualify as an ACCA predicate offense. We review de novo the district court's determination of whether a conviction so qualifies. United States v. Schaffer, 818 F.3d 796, 798 (8th Cir. 2016). The ACCA imposes a mandatory minimum 15 year sentence for a defendant convicted of being a felon in possession of a firearm who "has three previous convictions . . . for a violent felony." 18 U.S.C. § 924(e)(1). A crime qualifies as a predicate offense under the force clause of the ACCA definition of "violent felony" if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." Id. § 924(e)(2)(B)(i). To determine whether a prior conviction fits that definition, we "start with the formal categorical approach and look only to the fact of conviction and the statutory definition of the prior offense." United States v. Jordan, 812 F.3d 1183, 1186 (8th Cir. 2016) (quoting United States v. Soileau, 686 F.3d 861, 864 (8th Cir. 2012)). If the statute "criminalizes both conduct that does and does not qualify as a violent felony" and the statute is divisible, we apply the "modified categorical

approach" and may review certain judicial records "to identify which section of the statute supplied the basis for a defendant's conviction." Id.

## A.

Headbird first argues that Minnesota's second degree assault statute is not a violent felony under the ACCA because the state definition of assault does not contain an element which requires proof of "the use, attempted use, or threatened use of physical force." 18 U.S.C. § 924(e)(2)(B)(i). Minnesota Statutes section 609.222, subd. 1, makes it a felony to "assault[] another with a dangerous weapon." Assault is defined as "(1) an act done with intent to cause fear in another of immediate bodily harm or death; or (2) the intentional infliction of or attempt to inflict bodily harm upon another." Id. § 609.02, subd. 10. These two forms of assault are referred to in Minnesota respectively as "assault fear" and "assault harm." State v. Fleck, 810 N.W.2d 303, 308 (Minn. 2012).

In Schaffer, we analyzed a Minnesota statute which criminalizes "an act with intent to cause fear in another of immediate bodily harm or death" and concluded that it qualifies as a violent felony. 818 F.3d at 798; Minn. Stat. § 609.2242, subd. 1(1). The language in the "assault fear" part of the definition at issue here is materially identical to the statute in Schaffer. See Minn. Stat. § 609.02, subd. 10(1). Moreover, Headbird's argument that the "assault harm" part of the definition does not necessarily encompass the use or attempted use of physical force is foreclosed by United States v. Rice, 813 F.3d 704, 706 (8th Cir. 2016). In Rice we rejected a variation of Headbird's argument that "bodily harm" can be accomplished without violent force. See id. We thus agree with the holding in United States v. Harvey, ___ Fed. App'x ___, 2016 WL 1696816 (8th Cir. Apr. 28, 2016) (per curiam) (citing Schaffer and Rice), that Minn. Stat. § 609.222, subd. 1, is a violent felony under either definition of assault.

B.

Because Headbird's conviction for second degree assault was a juvenile adjudication, it must also have "involve[d] the use or carrying of a firearm, knife, or destructive device" in order to qualify as an ACCA predicate offense. 18 U.S.C. § 924(e)(2)(B). Headbird was convicted of assault "with a dangerous weapon," a term defined as:

> any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or great bodily harm, any combustible or flammable liquid or other device or instrumentality that, in the manner it is used or intended to be used, is calculated or likely to produce death or great bodily harm, or any fire that is used to produce death or great bodily harm.

Minn. Stat. § 609.02, subd. 6. We must therefore determine whether Minnesota's second degree assault statute is divisible with respect to the type of dangerous weapon used by Headbird to commit his crime. See United States v. Bankhead, 746 F.3d 323, 326 (8th Cir. 2014).

Headbird argues that the district court erred when it concluded that the assault statute is divisible and then applied the modified categorical approach to determine that he had used a firearm when committing the assault. The government initially argued that the statute is divisible under our decision in United States v. Mathis, 786 F.3d 1068, 1074–75 (8th Cir. 2015), but the Supreme Court reversed that decision in Mathis v. United States, 136 S. Ct. 2243, 2257 (2016). In light of the Supreme Court's decision in Mathis, the government now concedes that the phrase "with a dangerous weapon" in Minn. Stat. § 609.222, subd. 1 is not divisible. We agree.

To decide whether a prior conviction qualifies as an ACCA predicate, we must first determine which words or phrases in the statute are elements of the crime. See

Mathis, 136 S. Ct. at 2248. The elements of a crime are the "'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" Id. (quoting Black's Law Dictionary 634 (10th ed. 2014)). A prior conviction "cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense" (in this case a "violent felony" involving the use of a firearm, knife, or destructive device). Id. at 2251. The only items of consequence under the ACCA are the "elements of the statute of conviction." Id. (quoting Taylor v. United States, 495 U.S. 575, 601 (1990)). In contrast, the "'particular facts underlying [the prior] convictions'—the means by which the defendant, in real life, committed his crimes"—are irrelevant in our ACCA analysis. Id. (quoting Taylor, 495 U.S. at 600) (alteration in original). Thus, "when a statute, instead of merely laying out a crime's elements, lists alternative means of fulfilling one (or more)" elements, we consider only whether the elements satisfy the ACCA and do not apply the modified categorical approach to the list of means. Id. at 2253.

Minnesota's second degree assault statute makes it a felony to "assault[] another with a dangerous weapon." Minn. Stat. § 609.222, subd. 1. The text of this statute contains two elements: (1) assault, and (2) the use of a "dangerous weapon." Id.; see also Minnesota Jury Instruction Guides—Criminal (CRIMJIG) § 13.10 (2016). "Dangerous weapon" is defined in Minn. Stat. § 609.02, subd. 6, which lists the types of weapons which qualify as dangerous. The definition in § 609.02 describes what the Supreme Court has called the "brute facts" of the defendant's weapon. See Mathis, 136 S. Ct. at 2248. The definition of "dangerous weapon," in other words, "enumerates various factual means of committing a single element." Id. at 2249.

In Mathis, the Supreme Court described a hypothetical statute requiring the "use of a 'deadly weapon' as an element of [the] crime" and stating that "the use of a 'knife, gun, bat, or similar weapon' would all qualify." 136 S. Ct. at 2249. Such a statute, the Court explained, "merely specifies diverse means of satisfying a single element of a single crime—or otherwise said, spells out various factual ways of committing some

-5-

component of the offense." Id. Minnesota's assault statute is functionally identical to the Court's hypothetical statute. Although the Minnesota definition of "dangerous weapon" lists various ways in which a person can commit second degree assault—for example, with a firearm or a flammable liquid—it does not change the elements of the crime.

There are no published Minnesota cases analyzing the question of whether the various terms in the definition of "dangerous weapon" are intended as elements of the crime or only means by which the crime is committed. See Mathis, 136 S. Ct. at 2256 (looking to state case law to determine whether listed items in a statute are elements or means). Two unpublished decisions from the Minnesota Court of Appeals do support the proposition that the definition is a list of means, however. State v. Holen stated that "[t]he essential element of second-degree assault with a dangerous weapon is the fact that a dangerous weapon was used. The actual weapon used is the means by which the offense is committed." No. A12-2299, 2013 WL 6389857, at *4 (Minn. Ct. App. Dec. 9, 2013) (unpublished). In State v. Robb, the state court explained that jury unanimity "is not required as to the specific ways a [second degree assault] was committed," and therefore it "is not essential that the jury unanimously agree whether the instrumentality constituting the dangerous weapon was a bat, a pipe, a pole, or a golf club" because any of these objects "would constitute a dangerous weapon." No. C0-01-305, 2001 WL 1646457, at *3 (Minn. Ct. App. Dec. 26, 2001) (unpublished); see Mathis, 136 S. Ct. at 2248 (describing how a jury must find each element of a crime but not particular factual circumstances or events). We see no reason why the Minnesota Supreme Court would disagree with the analysis in those cases.

The fact that the definition of "dangerous weapon" is contained in a separate section of the Minnesota criminal statutes provides textual support for the conclusion that "with a dangerous weapon" is intended as an element of the crime and that the list of dangerous weapons contains means by which that element may be committed. See Mathis, 136 S. Ct. at 2250 (analyzing Iowa burglary statute and noting that its list of

locations "lay[s] out alternative ways of satisfying a single locational element"); Iowa Code § 713.1 (burglary of an "occupied structure"); id. § 702.12 (definition of "occupied structure"); cf. Descamps v. United States, 133 S. Ct. 2276, 2283–84 (2013) (describing a hypothetical burglary statute prohibiting "entry of an automobile as well as a building" as a statute with "alternative elements" requiring a modified categorical analysis). The Minnesota Legislature's use of the term "dangerous weapon" both standing alone, and within disjunctive lists, also indicates that it is intended to be an element of a crime. Compare Minn. Stat. § 609.222, subd. 1 (felony to "assault[] another with a dangerous weapon"), and id. § 609.71, subd. 1 (felony to disturb the peace when "armed with a dangerous weapon"), with id. § 609.66, subd. 1g(1) (felony to "possess[] a dangerous weapon, ammunition, or explosives" in a courthouse), and id. § 609.582, subd. 1(b) (burglary while possessing "a dangerous weapon, any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon, or an explosive").[1]

We conclude that the phrase "with a dangerous weapon" is an element of Minnesota's second degree assault statute, Minn. Stat. § 609.222, subd. 1, and that the separate definition of "dangerous weapon" in § 609.02, subd. 6, lists means for committing that element. The element "with a dangerous weapon" is not divisible. Minnesota's definition of "dangerous weapon" is broader than the ACCA's requirement that a juvenile adjudication "involve[] the use or carrying of a firearm, knife, or destructive device," 18 U.S.C. § 924(e)(2)(B). The state's second degree assault statue "cover[s] a greater swath of conduct than the elements of the relevant ACCA offense." Mathis, 136 S. Ct. at 2251. Headbird's juvenile adjudication was

_____

[1]Like the phrase "dangerous weapon," the "assault" element of second degree assault is also defined in a separate section of the statutes, § 609.02, subd. 10. See part II.A, supra. Unlike "dangerous weapon," however, the statutory definition of "assault" defines the elements of a common law crime. When giving the jury instructions for second degree assault, Minnesota courts also give a separate instruction containing the elements of assault. See Minnesota CRIMJIG § 13.10.

thus not an ACCA predicate offense, and he does not qualify as an armed career criminal because he had only two prior ACCA predicate convictions.

## III.

For these reasons we vacate Headbird's sentence and remand for resentencing consistent with this opinion.

_____