# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1527

_____

United States of America,

*Plaintiff - Appellee,*

v.

Jeffrey Joseph Pendleton,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: February 16, 2018
Filed: July 6, 2018

_____

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.[*]

_____

[*]This opinion is filed by Chief Judge Smith and Judge Colloton under Eighth Circuit Rule 47E.

COLLOTON, Circuit Judge.

A jury convicted Jeffrey Pendleton of unlawful possession of a firearm as a previously convicted felon. The district court[1] imposed a 15-year prison sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). On appeal, Pendleton disputes an evidentiary ruling at trial and challenges the determination that he qualifies as an armed career criminal under the sentencing statute. We conclude that there was no reversible error, and we therefore affirm.

I.

In March 2015, Pendleton was living in the basement of his nephew's home on the Lower Sioux Indian Reservation near Morton, Minnesota. On March 17, Penny Arredondo reported to law enforcement that she had observed Pendleton carrying a handgun at the nephew's residence. Three days later, law enforcement officers executed a search warrant at the house.

Officers entered the home and located Pendleton in a basement bedroom, crouched near the bed. After arresting Pendleton, officers found a loaded black nine millimeter semiautomatic handgun under the bed, approximately two feet from where Pendleton had been crouching. Prescription pill bottles bearing Pendleton's name were lying on a dresser in the room. Inside the dresser, officers found shotgun shells, a nine millimeter round, and a .380 caliber round, as well as several pairs of blue jeans that matched Pendleton's physical characteristics. Upstairs, officers found more pill bottles labeled for Pendleton and a bag of nine millimeter ammunition. A forensic examination later confirmed that Pendleton's DNA was on the grip, slide, and magazine of the handgun.

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

A grand jury charged Pendleton with unlawful possession of a firearm and unlawful possession of ammunition as a previously convicted felon, both in violation of 18 U.S.C. § 922(g)(1). The case proceeded to trial, and a jury found Pendleton guilty of possessing the firearm, but acquitted him of possessing ammunition. At sentencing, the district court concluded that Pendleton qualified as an armed career criminal under 18 U.S.C. § 924(e) and sentenced him to the statutory minimum term of 15 years' imprisonment.

II.

Pendleton appeals his conviction on the ground that the district court erred by admitting testimony of Penny Arredondo that she saw Pendleton carrying a handgun before the search. The government gave advance notice of Arredondo's testimony, and Pendleton moved *in limine* to exclude it. The district court denied the motion, stating that Arredondo's testimony was admissible under Federal Rule of Evidence 404(b). The court also overruled Pendleton's renewed objection to Arredondo's testimony before opening statements.

At trial, Arredondo testified that while visiting Pendleton's nephew, she observed Pendleton carrying a firearm on his waistband "maybe two or three months tops" before law enforcement executed the search warrant. When asked to describe the gun, Arredondo testified: "I want to say black. It's not one—not like a revolver. Just one that you put like a—what do you call those, you fill it and then you just pop it in, the casings." We review the district court's evidentiary rulings for abuse of discretion. *United States v. White*, 816 F.3d 976, 982 (8th Cir. 2016).

The district court admitted Arredondo's testimony for limited purposes as evidence of a crime, wrong, or other act under Rule 404(b). We agree with the government, however, that the testimony was relevant to the charged offense and was therefore admissible under Rule 402. Arredondo testified that she observed

Pendleton carrying a black semiautomatic handgun within two or three months of the search, and officers found a black semiautomatic handgun under the bed near which Pendleton was crouching when they arrested him. Arredondo's testimony tended to make it more probable that the firearm under the bed belonged to Pendleton, because a jury reasonably could infer that the gun under the bed was the gun that Arredondo saw Pendleton carrying in his waistband. *See* Fed. R. Evid. 401.

Pendleton complains that Arredondo's observation was too remote in time to be relevant, but the fact that Pendleton carried a firearm of the same description within eight weeks of the search would tend to make it more likely that the seized gun belonged to him. Pendleton also attacks Arredondo's credibility, but a challenge to credibility does not affect admissibility of testimony under Rule 402. *See United States v. Searing*, 984 F.2d 960, 965-66 (8th Cir. 1993). It was for the jury to determine how much weight to give the testimony in light of Pendleton's arguments about temporal proximity and credibility. The district court properly admitted the disputed testimony, and we therefore affirm the conviction.

Pendleton next argues that the district court erred by enhancing his sentence under the Armed Career Criminal Act. To qualify as an armed career criminal under the ACCA, a defendant must have sustained at least three previous convictions for a violent felony or serious drug offense. 18 U.S.C. § 924(e)(1). The district court concluded that Pendleton had incurred three previous convictions for a violent felony: one conviction for first-degree assault and two convictions for second-degree assault, all in Minnesota. We review the district court's determination *de novo*. *United States v. Whaley*, 552 F.3d 904, 905 (8th Cir. 2009).

Pendleton contends that his second-degree assault convictions do not qualify as violent felonies. Under the ACCA's "force clause," a conviction qualifies if the crime "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(i). "Physical force" means "*violent*

force—that is, force capable of causing physical pain or injury to another person." *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010).

At the time of Pendleton's offenses of conviction, Minnesota law defined the crime as "assault[ing] another with a dangerous weapon." Minn. Stat. § 609.222, subdiv. 1 (1992); Minn. Stat. § 609.222 (1989). "Assault" meant "(1) An act done with intent to cause fear in another of immediate bodily harm or death; or (2) The intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subdiv. 10 (1997); Minn. Stat. § 609.02, subdiv. 10 (1989). And "bodily harm" was defined as "physical pain or injury, illness, or any impairment of physical condition." Minn. Stat. § 609.02, subdiv. 7 (1997); Minn Stat. § 609.02, subdiv. 7 (1989).

Pendleton contends that assault in Minnesota did not categorically require the use, attempted use, or threatened use of violent physical force. He cites the fact that the statute does not require the defendant to cause actual bodily harm but only "fear" of bodily harm, and he emphasizes that "bodily harm" includes "illness" or "impairment of physical condition" as well as "physical pain or injury." But as Pendleton acknowledges, our decisions have specifically rejected comparable arguments based on these aspects of the statute. *See United States v. Headbird*, 832 F.3d 844, 846-47 (8th Cir. 2016); *United States v. Lindsey*, 827 F.3d 733, 739-40 (8th Cir. 2016); *United States v. Schaffer*, 818 F.3d 796, 798-99 (8th Cir. 2016). We therefore conclude that Pendleton's two convictions for second-degree assault in Minnesota qualify as violent felonies under the force clause.

Pendleton argues alternatively that the ACCA's force clause is unconstitutionally vague because it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Samuel Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). The Supreme Court held the ACCA's "residual clause" void for vagueness because it created an

indeterminate "risk" standard that left courts with "grave uncertainty about how to estimate the risk posed by a crime" and "uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2557-58; *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1213-14 (2018).

Those two features of the residual clause are not present with the force clause. The residual clause "tie[d] the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to . . . statutory elements," and the Court thought there was no reliable way to determine what an "ordinary" crime involved. *Samuel Johnson*, 135 S. Ct. at 2557. The force clause, by contrast, permits the sentencing court to focus on statutory elements and to analyze whether those elements necessarily involve the use, attempted use, or threatened use of force. The residual clause also required courts to interpret potential risk of physical injury in light of four enumerated crimes that are "far from clear in respect to the degree of risk each poses." *Id.* at 2558 (quoting *Begay v. United States*, 553 U.S. 137, 143 (2008)). The force clause includes no enumerated crimes; it allows the sentencing court to consider the offense of conviction by itself in determining whether the elements involve the use, attempted use, or threatened use of force. Without the two problematic aspects of the residual clause, the force clause presents a manageable judicial inquiry that provides adequate notice to potential offenders. We therefore reject Pendleton's contention that the force clause is unconstitutionally vague.

Because Pendleton's assault convictions qualify as violent felonies under the ACCA's force clause, and because the force clause is not void for vagueness, Pendleton had three previous convictions for a violent felony when he committed the instant offense. The district court therefore properly sentenced him to 15 years' imprisonment under the ACCA.

\*       \*       \*

The judgment of the district court is affirmed.

_____