# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3388

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Jerry L. Petty, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 15, 2004

Filed: May 18, 2004

_____

Before WOLLMAN, MORRIS SHEPPARD ARNOLD, and COLLOTON, Circuit
Judges.

_____

COLLOTON, Circuit Judge.

Jerry Petty was charged with unlawful possession of a firearm as a previously
convicted felon, in violation of 18 U.S.C. § 922(g)(1). Petty moved to suppress two
handguns found during an inventory search of a rental car on the ground that the car
was impounded in violation of the Fourth Amendment. After the district court[1]

_____

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the
Western District of Missouri, adopting the report and recommendation of the
Honorable Sarah W. Hays, United States Magistrate Judge for the Western District

denied Petty's motion, Petty entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion. We affirm.

I.

In the early morning hours of August 19, 2002, Officer James Helton of the Kansas City, Missouri, police department saw Petty drop a bag in an area known for narcotics activity and prostitution. An officer retrieved the bag, and it contained crack cocaine. Petty was arrested. While searching Petty incident to his arrest, officers found over $2,000 in cash and an Enterprise Leasing car key.

While detaining Petty, officers observed a female walking toward an adjacent parking lot. The officers questioned the female, who stated that she had come to the area with Petty in a white car. The officers located a white car in the parking lot. The lot belonged to a business that was closed, but the district court found that the car was not parked illegally. Enterprise Leasing owned the car, and the unidentified female claimed no interest in it. After taking Petty into custody, the officers decided to impound the car. Before towing the vehicle, it was police department procedure to create an inventory of its contents. During the inventory search, the police found two stolen .38 caliber revolvers which were loaded.

Petty moved to suppress the guns. The government did not rely on probable cause to search the vehicle, *cf. United States v. Brown*, 49 F.3d 1346, 1350 (8th Cir. 1995), but argued instead that the search was a permissible inventory conducted after a lawful impoundment. At the suppression hearing, Officer Helton testified that when a suspect with a car at the scene is taken into custody, it was department policy either to "tow the vehicle, release it to another subject, or leave it there." He further testified that the decision to impound the car was made, at least in part, because it was

of Missouri.

owned by Enterprise Leasing, not by Petty. Officer Helton explained that "what we do is we tow it to our tow lot, and then Enterprise will come back and recover the vehicle."

The officer testified that he ruled out the option of releasing the car to another subject, because the female companion had no interest in the vehicle. He stated that after consulting with a police sergeant, he declined to leave the car in the parking lot, reasoning that the car "was on a private lot," that "you can't leave a car abandoned, . . . because we're responsible for it," and that the car "did not belong there." He explained that police earlier had caused the only other non-business vehicle in the parking lot to exit by directing the sleeping driver to "move on." On cross-examination, Officer Helton acknowledged that part of his motivation in towing the car was to find out whether there were more drugs or cash inside, saying "that's part of our investigation."

The district court, adopting the report and recommendation of a magistrate judge, denied Petty's motion to suppress the firearms. Petty pled guilty to the firearms charge, and he was sentenced to a term of 20 months imprisonment.

II.

When considering the denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Vanhorn*, 296 F.3d 713, 717 (8th Cir. 2002), *cert. denied*, 537 U.S. 1167 (2003). Petty argues that the impoundment of the rental car by police was unconstitutional. As a result, he contends, the firearms discovered pursuant to the subsequent inventory search were the fruit of an unlawful seizure, and must be suppressed.

Impoundment of a vehicle for the safety of the property and the public is a valid "community caretaking" function of the police. *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). "Police may take protective custody of a vehicle when they have arrested its occupants, even if it is lawfully parked and poses no public safety hazard." *United States v. Martin*, 982 F.2d 1236, 1240 (8th Cir. 1993) (citations omitted). Despite these well-established principles, Petty argues that the seizure was invalid because the government failed to present evidence of a standardized impoundment policy to guide the exercise of police discretion.

Petty's argument is based on *Colorado v. Bertine*, 479 U.S. 367, 375 (1987), wherein the Supreme Court held that police may exercise discretion to impound a vehicle, "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Some degree of "standardized criteria" or "established routine" must regulate these police actions, which may be conducted without the safeguards of a warrant or probable cause, to ensure that impoundments and inventory searches are not merely "a ruse for general rummaging in order to discover incriminating evidence." *See Florida v. Wells*, 495 U.S. 1, 4 (1990).

The requirement that discretion be fettered, however, has never meant that a decision to impound or inventory must be made in a "totally mechanical" fashion. *Wells*, 495 U.S. at 4. As with an inventory search, an impoundment policy may allow some "latitude" and "exercise of judgment" by a police officer when those decisions are based on concerns related to the purposes of an impoundment. *Id.* It is not feasible for a police department to develop a policy that provides clear-cut guidance in every potential impoundment situation, and the absence of such mechanistic rules does not necessarily make an impoundment unconstitutional.

The district court found that "[i]t is standard police policy to tow a vehicle when there is no one available to drive it," and Officer Helton testified that the police

-4-

were responsible for impounding a vehicle that was abandoned. It would have been simpler for the government to present the police department's written impoundment policy, *cf. State v. Meza*, 941 S.W.2d 779, 781-82 (Mo. Ct. App. 1997), but testimony can be sufficient to establish police procedures, *United States v. Lowe*, 9 F.3d 43, 46 (8th Cir. 1993), and we find no clear error in the district court's finding that the department had a standard policy. To be sure, under the procedures described in this case, the officer must exercise some judgment to determine whether a driver is "available" or a vehicle is "abandoned" in a particular instance, but we believe the proffered criteria are sufficiently "standardized" to satisfy the reasonableness requirement of the Fourth Amendment. So long as the officer's residual judgment is exercised based on legitimate concerns related to the purposes of an impoundment, his decision to impound a particular vehicle does not run afoul of the Constitution. *Cf. Wells*, 495 U.S. at 4.

The police had a sufficient basis to conclude that the rental car should be impounded pursuant to their standard policy, and that exercise of the community caretaking function was warranted. There was no driver available, because Petty had been arrested, and his female companion wanted nothing to do with the car. The car was left unattended at 1:30 a.m. in an area known for narcotics and prostitution. The business that owned the parking lot was closed, and there was no reason for officers to believe that Petty (who had just been arrested for possession of crack cocaine) was connected to the business. The vehicle was owned by Enterprise Leasing, not by Petty, so the police appropriately were concerned with protecting the property of the rental company from damage or theft. It was not unreasonable for the police, having just arrested the party who leased the vehicle, to feel that they were responsible for safeguarding the car until it could be retrieved by the owner.

Petty argues that the impoundment was nevertheless tainted by the officer's investigatory motive. That an officer suspects he might uncover evidence in a vehicle, however, does not preclude the police from towing a vehicle and

inventorying the contents, as long as the impoundment is otherwise valid.  *United States v. Garner*, 181 F.3d 988, 991-92 (8th Cir. 1999).  Indeed, police "may keep their eyes open for potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime," *United States v. Marshall*, 986 F.2d 1171, 1176 (8th Cir. 1993), and the same rule applies to an impoundment that precedes an inventory.

\*        \*        \*

For the foregoing reasons, we affirm the judgment of the district court.

_____