United States Court of Appeals

For the Eighth Circuit

_____

No. 16-1419

_____

United States of America

*Plaintiff - Appellee*

v.

Rashawn Long

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: June 13, 2018
Filed: October 12, 2018

_____

Before LOKEN and MELLOY, Circuit Judges.[1]

_____

MELLOY, Circuit Judge.

Rashawn Long was convicted by a jury of one count of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), and one

---

[1] Judge Murphy had been assigned to the panel that originally heard this matter and issued an opinion dated August 31, 2017. Judge Murphy passed away on May 16, 2018 and did not participate in this panel rehearing.

count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Long was sentenced to 360 months' imprisonment. He appeals, arguing the district court[2] erred by failing to suppress evidence discovered during an inventory search. He also argues the district court erred in calculating his criminal history. We affirm Long's convictions and sentence.

I.

On October 26, 2013, Long parked his car in the backyard of Valerie McCoy's house. Long did not know McCoy. He approached McCoy's door, knocked, received no answer, and left on foot, leaving the car parked in her backyard without permission. McCoy was home at the time and had observed Long park his car. Out of fear due to the unusual situation, and because she did not recognize Long, she did not answer the door. Instead, she locked herself in her bedroom and called the Kansas City, Missouri police.

When officers arrived at the scene of the apparent trespassing and vehicle abandonment, McCoy explained that a black male parked the car in her yard, knocked on the door, and left when she did not answer. The officers found a 2013 silver Avenger parked in McCoy's backyard, ran the license plate number, and learned it was a rental car. After an unsuccessful attempt to contact the rental company, the officers called a tow truck to remove the car from McCoy's property.

After officers had already ordered the tow truck, Long ran towards them from another property. He gave the officers his name, told the officers the name of the person who had rented the car, and explained that he had parked the car in McCoy's

---

[2]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri, adopting the Report and Recommendation of the Honorable John T. Maughmer, United States Magistrate Judge for the Western District of Missouri.

yard to hide the car so that he could visit the nearby home of a girlfriend without being seen. Recognizing the strangeness of the situation, the officers handcuffed and frisked Long and asked if they could look in the car. Long said it would be okay but that the keys were at a nearby house. He did not otherwise provide assistance to the officers to obtain the keys or enable a search.

Officers ran Long's name, and a computer search revealed two outstanding warrants for his arrest. Believing these warrants were out of Kansas City, Missouri, the officers placed Long in a patrol vehicle. Soon after, the officers learned the warrants were out of Kansas City, Kansas, and were non-extraditable. The officers did not, however, remove Long's handcuffs or release him from the patrol vehicle.

Officer Ballowe, one of the first officers on the scene, asked the patrol vehicle driver to continue holding Long so he could "determine if there was anything illegal in the car." Around this time, Sergeant Hamilton, a member of the Kansas City Police Department's illegal firearms squad, arrived at the scene. He was called because he was investigating Long as a possible suspect in several homicides and had asked to be notified any time Long had an encounter with police. Sergeant Hamilton was with Officer Ballowe for the entire vehicle search.

Because the car was locked, the tow-truck driver used a "slim jim" to open the car door. On the passenger seat of the car, Officer Ballowe found a backpack containing pepper spray, a taser, and a Coke can. The can felt hard and solid, so Officer Ballowe twisted the top of the can and discovered a bag containing a white powder. At this point, Sergeant Hamilton told Officer Ballowe to stop the inventory search in order to obtain a search warrant.

Long was placed under arrest, the vehicle was towed, and Long was issued a ticket for illegally parking the vehicle. After obtaining the search warrant, officers discovered a camcorder in the car. The camcorder contained clips of Long with a

Glock pistol. Additionally, the white powder was tested and determined to be 2-(Methylamino)-1-phenyl-1-butanone (buphedrone), a Schedule I controlled substance. Long was subsequently indicted for possession with intent to distribute a controlled substance and possession of a firearm by a felon.

Before trial, Long moved to suppress the evidence against him. Following a suppression hearing, the magistrate judge recommended denying the motion to suppress, finding that the vehicle search was a valid inventory search and assuming, without deciding, that Long had standing to challenge the search. The district court adopted that recommendation.

Long was convicted of both counts at trial. The initial Presentence Investigation Report ("PSR") calculated a Guidelines range of 92–115 months' imprisonment, based on an offense level of 26 and a criminal history category of IV. Long objected to the PSR's computation of criminal history points. Specifically, the PSR assessed three criminal history points for Long's prior Missouri conviction for second-degree murder, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 4A1.1(a). The PSR assessed an additional point for Long's Missouri conviction for armed criminal action,[3] pursuant to U.S.S.G. § 4A1.1(e). Long argued that his conviction for armed criminal action is not a crime of violence and, thus, he should not be assessed the additional criminal history point. At sentencing, the district court concluded that armed criminal action is a crime of violence and that Long's Guidelines range was 92–115 months' imprisonment. The district court concluded an upward variance was appropriate based on the 18 U.S.C. § 3553(a) factors and sentenced Long to 360 months' imprisonment.

On appeal, we affirmed, holding that Long lacked standing to challenge the vehicle search. We noted the existence of a circuit split as to whether a person not

---

[3] Mo. Rev. Stat. § 571.015(1).

named in a car rental agreement has a Fourth Amendment expectation of privacy when driving a rental car with consent received directly from the named renter. As to that issue, the Eighth Circuit had already determined that such a driver with first-person consent enjoyed a protectable expectation of privacy. United States v. Best, 135 F.3d 1223, 1225 (8th Cir. 1998). We held, however, that Long's claim to a privacy expectation was too far removed because he had merely obtained second-hand permission from such a consent driver; the renter of the vehicle had not given permission directly to Long. We also affirmed as to the sentencing issues Long raised on appeal.

Subsequently, the Supreme Court took up the issue posed in the circuit split and resolved the issue consistently with our circuit's law: there is no per se rule that the driver of a rental vehicle, who has received consent directly from the listed renter, lacks a protected expectation of privacy in that vehicle. United States v. Byrd, 138 S. Ct. 1518, 1527–28 (2018). In its opinion, however, the Court raised additional questions concerning the scope of privacy expectations in the context of rental vehicles. See id. at 1531. We read Byrd as indicating, at a minimum, that privacy expectations in rental vehicles are not subject to easily articulated bright-line rules. Because Byrd arguably calls into question the standing determination upon which we based our initial opinion in this case, we now vacate our prior opinion and affirm for the reasons stated herein.

II.

On appeal, Long asserts the district court erred in denying his motion to suppress. Long also contends that the Missouri offense of armed criminal action is not a crime of violence and, thus, the district court erred in assessing a criminal history point for that conviction. Alternatively, Long argues his sentence is substantively unreasonable.

A.

We assume without deciding that Long has standing to challenge the search of the rental vehicle. In reviewing a challenged search, "[t]his Court reviews the facts supporting a district court's denial of a motion to suppress for clear error and reviews its legal conclusions de novo." United States v. Cotton, 782 F.3d 392, 395 (8th Cir. 2015). "This court will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." United States v. Hogan, 539 F.3d 916, 921 (8th Cir. 2008) (quoting United States v. Annis, 446 F.3d 852, 855 (8th Cir. 2006)).

Long argues that the district court should have suppressed the evidence discovered during the search of his vehicle because the inventory search prior to towing his vehicle was unconstitutional. We disagree. While we acknowledge Long's concerns that officer comments serve as evidence suggesting pretext, "[t]he presence of an investigative motive does not invalidate an otherwise valid inventory search." United States v. Garner, 181 F.3d 988, 991 (8th Cir. 1999).

Here, the search was a reasonable inventory search of the vehicle—a vehicle Long used to trespass on the private property of stranger and which he concealed without permission in that person's backyard before seemingly abandoning the vehicle. In response to the homeowner's understandable call for help in this suspicious situation, and before Long returned to the scene, the officers determined it was necessary and appropriate to tow the car. In fact, the officers had already called the tow vehicle before Long came running back to the scene.

As of that point in time, an inventory search was fully justified. Nothing that occurred after Long's return lessened the need or the propriety of towing the vehicle and performing an inventory search. Long's behavior and explanations, including his

claim of permission to drive the rented vehicle (unsupported by keys or by the ability to reach the rental company or the purported renter), left officers with little assurance that it would have been appropriate to release the vehicle to his control. In any event, we review the propriety of an inventory search under a totality-of-the-circumstances test. United States v. Marshall, 986 F.2d 1171, 1174 (8th Cir. 1993) ("Thus, in the Court's view the central inquiry is whether the inventory search is reasonable under all the facts and circumstances of the particular case."). And given the unusual circumstances in McCoy's backyard, it was reasonable to conduct the search.

To the extent Long asserts that the inventory search was not properly performed, or not in compliance with the police department's inventory-search protocols, his arguments are unavailing. He argues first that abandoned vehicles cannot be towed under Kansas City Missouri Police Department written policies unless a summons is presented to the owner or operator or affixed to the vehicle prior to towing. The policy Long cites, however, recognizes discretion for officers in the field. And, again, the decision to tow in this case was made in response to the trespass report, before Long arrived on the scene, and in reference to a rental vehicle when the rental company could not be reached and when the operator was unknown.

Long also asserts the search was not a valid inventory search because officers did not open the glove box or trunk and did not write down items observed in the backpack. The officers, however, do not claim to have completed their inventory search. Rather, quickly after initiating the inventory search, officers discovered probable cause for a search warrant and stopped their search. These arguable deviations from the department's written policy are understandable in context and are not infirmities that make the inventory search unconstitutional. See United States v. Mayfield, 161 F.3d 1143, 1145 (8th Cir. 1998) (rejecting challenges to an inventory search even though "the inventory list started at the scene was not completed as it should have been"); see also United States v. Garreau, 658 F.3d 854, 858 (8th Cir.

2011) (holding that an officer's "minor deviation from . . . policy was not sufficient to render [an inventory] search unlawful").

B.

Long also argues the district court erred in assessing an additional criminal-history point because his prior conviction for armed criminal action is not a "crime of violence." We review a district court's determination that a prior conviction is a crime of violence under the Guidelines de novo. United States v. Maid, 772 F.3d 1118, 1120 (8th Cir. 2014).

Pursuant to U.S.S.G. § 4A1.1(e), a sentencing court "[a]dd[s] [one criminal-history] point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under [§ 4A1.1] (a), (b), or (c)." At sentencing on March 25, 2016, the Guidelines provided that a "crime of violence" was any crime punishable by more than one year in prison that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). The "or otherwise" clause is referred to as the residual clause.

On January 8, 2016, the sentencing commission announced that it had unanimously voted to eliminate the residual clause of the Guidelines. That amendment, however, did not become effective until August 1, 2016. U.S.S.G. app. C, amend. 798. And the Supreme Court recently held that the residual clause in U.S.S.G. § 4B1.2(a)(2) is not unconstitutionally vague. Beckles v. United States, 137

S. Ct. 886, 890 (2017).  Thus, at the time of Long's sentencing, the residual clause was still in effect, and we must now determine whether armed criminal action in Missouri is a crime of violence under either the force clause or the residual clause. See United States v. Benedict, 855 F.3d 880, 888–89 (8th Cir. 2017).

Here, the offense of conviction provides that "any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action."  Mo. Rev. Stat. § 571.015(1).  Because this statute sets forth a single set of elements, it is not divisible and we apply the categorical approach to determine whether it is a crime of violence.  See Descamps v. United States, 133 S. Ct. 2276, 2283 (2013) (categorical approach); State v. Jones, 479 S.W.3d 100, 106 (Mo. 2016) (en banc) (stating that a person is guilty under this statute "if the evidence was sufficient for the jury to find beyond a reasonable doubt *any one* of at least the . . . nine permutations" of the three prepositions (by, with, or through) and the three nouns (use, assistance, or aid)).  Long argues a conviction under this statute is not a crime of violence under the force clause because it does not require a person to use a dangerous instrument or deadly weapon against *the person of another*; "any felony" can include a property crime.  Jones, 479 S.W.3d at 108 ("Armed criminal action under section 571.015.1 does not require that the defendant actually attack or threaten an imminent attack with the weapon.").  However, since we conclude the offense of conviction is a crime of violence under the then-existing residual clause, we leave the question of whether it also qualifies under the force clause for another day.

"To qualify as a crime of violence under the residual clause, [Long's] prior conviction must (1) 'present[ ] a serious potential risk of physical injury to another,' and (2) be 'roughly similar, in kind as well as degree of risk posed,' to the offenses listed in § 4B1.2(a)(2)."  United States v. Watson, 650 F.3d 1084, 1092 (8th Cir. 2011) (second alteration in original) (quoting United States v. Boyce, 633 F.3d 708, 711 (8th Cir. 2011)).  In Watson, this court held that an Oklahoma conviction under

a statute similar to the Missouri statute in this case is a crime of violence under the residual clause. Id. at 1092–94.[4] And other courts have held that convictions under similar statutes in other states qualify as violent felonies under the now-unconstitutional residual clause in the Armed Career Criminal Act. See, e.g., United States v. Fife, 624 F.3d 441 (7th Cir. 2010) (analyzing 720 Ill. Comp. Stat. 5/33A-2); United States v. Cordova, No. 7:13-CR-90-D, 2014 WL 4443294 (E.D.N.C. Sept. 9, 2014) (analyzing Mass. Gen. Laws ch. 265, § 18B).

We conclude that armed criminal action in Missouri is a crime of violence under the residual clause. Possessing a deadly weapon or dangerous instrument while committing a felony "presents a serious potential risk of physical injury to another" because it is likely that the offender will later use it if he encounters another person during the commission of the felony. See United States v. Guiheen, 594 F.3d 589, 591 (8th Cir. 2010); United States v. Haney, 23 F.3d 1413, 1418–19 (8th Cir. 1994). And that serious potential risk of physical injury is "similar, in kind as well as degree of risk posed," to the enumerated offenses. See Watson, 650 F.3d at 1092; Boyce, 633 F.3d at 711. As a result, the district court did not err in assessing an additional criminal history point for Long's Missouri conviction for armed criminal action.

Alternatively, Long argues his 360-month sentence is substantively unreasonable. We review the substantive reasonableness of a sentence for abuse of discretion. United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). Long asserts the 21-year upward variance was unduly harsh and unreasonable

---

[4] The Oklahoma statute provided: "Any person who, while committing or attempting to commit a felony, possesses a pistol, shotgun or rifle or any other offensive weapon in such commission or attempt . . . in addition to the penalty provided by statute for the felony committed or attempted, upon conviction shall be guilty of a felony for possessing such weapon or device, which shall be a separate offense from the felony committed or attempted." Watson, 650 F.3d at 1092 (quoting 21 Okla. Stat. § 1287).

because it relied too heavily on his history and characteristics and because it greatly differs from sentences other defendants received for similar conduct.

"A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." Id. (internal quotation marks and citation omitted). If a district court deviates from the advisory Guidelines range, it must "give serious consideration to the extent of any departure from the Guidelines and must explain [its] conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications." Id. at 462 (alteration in original) (quoting Gall v. United States, 552 U.S. 38, 46 (2007)). The district court has discretion to rely more heavily on some sentencing factors than others, United States v. Townsend, 617 F.3d 991, 994 (8th Cir. 2010) (per curiam), and a defendant challenging the district court's sentence "must show more than the fact that the district court disagreed with his view of what weight ought to be accorded certain sentencing factors." Id. at 995.

In this case, the district court gave "substantial insight into the reasons for its determination." Feemster, 572 F.3d at 463 (internal quotation marks and citation omitted). The district court addressed Long's criminal history, observing that Long had a drug conviction at 18 and pled guilty to second-degree murder at 20. The district court made clear that it was considering the totality of the circumstances, including Long's history and characteristics. Addressing Long, the district court stated, "You have shown through your conduct that you're not able to conform to society as we know it in terms of you being out [of jail]. And the problem here is people will get hurt if you are on the street." Finally, the district court acknowledged that it was imposing a significant upward variance, explaining, "I think this sentence is appropriate, and arguably the Court could have ran as high as 40 years. I didn't,

-11-

but I think this is a sentence that is not greater than necessary, but this is a sentence that is certainly going to protect the public from you."

The district court adequately explained the sentence it imposed on Long. The court clearly addressed the § 3553(a) factors and, although the court focused most on Long's history and characteristics, there was no abuse of discretion. Long has not shown "more than the fact that the district court disagreed with his view of what weight ought to be accorded certain sentencing factors." Townsend, 617 F.3d at 995.

III.

Based on the foregoing discussion, we affirm Long's convictions and sentence.[5]

_____

[5] Long raised a number of other arguments in supplemental pro se briefing on appeal. Finding those arguments to be without merit, we summarily affirm under Eighth Circuit Rule 47B. Additionally, we deny Long's Motion to File a Supplemental Reply Brief and Motion for Production of Video and for In Camera Inspection.