# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-1662

_____

United States of America

*Plaintiff - Appellee*

v.

Eric Cortez Sallis

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Waterloo

_____

Submitted: November 15, 2018
Filed: April 9, 2019

_____

Before BENTON, BEAM, and ERICKSON, Circuit Judges.

_____

BEAM, Circuit Judge.

After the magistrate judge[1] recommended denial of Eric Cortez Sallis's motion to suppress, which report and recommendation the district court[2] adopted, Sallis pleaded guilty to count two of the indictment, possession of a firearm and ammunition by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court sentenced Sallis to 120-months' imprisonment followed by three years of supervised release. On appeal Sallis asserts the district court erred in denying the motion to suppress because the search conducted by law enforcement violated his Fourth Amendment rights. We affirm the denial of Sallis's motion to suppress.

## I.    BACKGROUND

On November 27, 2016, a patient admitted at a Waterloo, Iowa, hospital suffering from multiple gunshot wounds, along with other witnesses, identified Sallis as the shooter. Officers executed a search warrant at Sallis's residence where they recovered a 9mm bullet, a 9mm shell casing, and blood spatter, but Sallis was not present and officers did not recover a firearm. At the time, there were outstanding warrants for Sallis's arrest on unrelated offenses. Based on his suspected involvement in the November shooting as well as his outstanding warrants, the Waterloo Police Department disseminated information about Sallis to all of its divisions.

On December 9, 2016, a confidential source (CI) provided information to a Waterloo police officer that Sallis was staying at a particular apartment complex with a named female and provided the apartment number to the officer. This CI had been a known source to the police for a year and had provided reliable information in the past that led to the discovery and seizure of stolen property, drugs, and other

---

[1]The Honorable C.J. Williams, Chief United States Magistrate Judge for the Northern District of Iowa.

[2]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

contraband. The CI told the officer that more than one child was present in the particular apartment. Officers learned through a public database that the woman who resided at that apartment was a relative of Sallis's and officers began surveillance of the residence. On the night of December 9, officers observed Sallis come down the steps of the apartment complex two times, enter vehicles, and engage in behavior that, based on their experience, indicated drug trafficking. When Sallis got into the second vehicle, officers approached the car and arrested him on his outstanding warrants. On the back seat of the second vehicle near where Sallis sat, officers recovered a cellular phone, a silver bag officers had previously observed Sallis carrying into the apartment that contained 1/4 pound of marijuana, and more than $1,500 in cash. The officers believed the quantity of drugs and cash retrieved were consistent with drug trafficking. Sallis would not identify the apartment number he had been in, denied living there, and said he was just "visiting." Sallis also denied that anyone was in the apartment at the time and said the resident who lived there was on her way back.

A sergeant involved in the surveillance decided at that time to apply for a search warrant for the apartment based on all of the information then-available, including what the officers' observed during surveillance, their knowledge that firearms are tools of the drug trade, Sallis's involvement with the shooting in late November, and the fact that officers did not recover a firearm during the earlier search of Sallis's residence. Upon request, Sallis gave the officers the phone number of the woman who lived in the apartment. But, when the sergeant called the number, the female who answered was evasive when asked if she lived in the particular apartment and ultimately hung up during the conversation. While officers applied for a search warrant, the sergeant decided to secure the apartment and check on the children that the CI said were present. Officers placed Sallis in a police car and advised him of his constitutional rights.

There was no answer at the apartment door when officers knocked. The sergeant then twisted the door knob and the door opened a short distance. A small boy, who was about four or five years old, came out into the living room and was visible from the door. The boy indicated to the officers that other children were also in the apartment almost simultaneous to the emergence of other children from the same hallway. Ultimately the officers entered the apartment, confirmed no adults were present by conducting a protective sweep, and secured the apartment until officers could find an adult to care for the five children.

Shortly thereafter, the woman who resided in the apartment arrived with another woman and the officers informed the resident that Sallis was in custody and that they had applied for a search warrant. The resident told officers that Sallis sometimes stayed overnight and pointed out some of Sallis's clothing laying on the couch. Officers asked the resident for consent to search her apartment and she asked to first speak to Sallis to discuss the matter. When she walked out and talked to Sallis near the police car, he admitted there was marijuana and more cash in the apartment and instructed her to "get [his] bag" and give it to the officers. Sallis told the officer that "I'll give it to you," referring to the marijuana, and said the resident would get the bag, explaining "I'll have her go get it."

Back in the apartment, while waiting for the warrant, the resident brought a plastic tote and a bag to the living room, that she identified as both belonging to Sallis. Officers smelled marijuana and observed packaged marijuana in plain view in the bag. This latter information regarding the marijuana was included in the search warrant affidavit being prepared contemporaneously, and that was later used to search the apartment. During the resulting warrant search, officers found bags with marijuana, scales, 9mm ammunition, and a 9mm handgun. At the time the search took place, Sallis had been transferred to the police station and while there, officers advised Sallis about finding the handgun in the apartment and Sallis made incriminating statements about the firearm.

-4-

Sallis challenged the officers' warrantless entry into the apartment and sought to exclude evidence obtained from the resulting warrant search, arguing that the search violated his Fourth Amendment rights. Sallis additionally argued that there was no consent for the search of his belongings, and that the inevitable discovery doctrine did not apply. The district court held that the officers' entry into the apartment was justified pursuant to their community caretaking function, Sallis consented to the search, and additionally that even if the officers' entry was illegal, the evidence would still be admissible under the inevitable discovery exception. Following the denial of his motion to suppress, Sallis entered a conditional plea of guilty and reserved his right to appeal the denial. Sallis now raises the same objections to the officers' search on appeal.

## II.    DISCUSSION

"Reviewing the denial of a motion to suppress, this court reviews 'legal conclusions de novo and factual findings for clear error.'" United States v. Morris, 915 F.3d 552, 555 (8th Cir. 2019) (quoting United States v. Woods, 747 F.3d 552, 555 (8th Cir. 2014)). We will affirm the district court "unless the denial of the motion is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made." United States v. Gunnell, 775 F.3d 1079, 1083 (8th Cir. 2015) (quoting United States v. Douglas, 744 F.3d 1065, 1068 (8th Cir. 2014)).

### A.    Initial Entry and Consent

Sallis first challenges the district court's conclusion that the officers' initial entry into the apartment was justified under the community caretaking exception to the warrant requirement. His ultimate claim is threefold, however, or more of a chain-of-events claim. Sallis argues that the firearm and ammunition found during the execution of the search warrant were discovered based on the information

contained in the warrant affidavit that marijuana was discovered in Sallis's bag in the apartment, which was known because Sallis allegedly instructed the resident to give his bag to the officers, which only occurred because the officers had illegally entered the apartment and were waiting for the resident to return in order to seek her consent. As to the initial entry, Sallis claims that in this instance law enforcement lacked "specific and articulable facts" that an emergency existed; particularly that officers did not have specific, reliable information that children were presently inside the home and in danger. Here, however, because it was Sallis's consent that led to the discovery of the marijuana, and nothing was gained in this investigation as a result of the officers' initial entry into the apartment, we focus our analysis with Sallis's alleged consent–the only legal inquiry of consequence.

Sallis claims the search was invalid because he did not consent to the search and seizure of the tote and bag brought to the officers by the resident and in which officers first observed marijuana in the apartment. At issue is Sallis's statement to the resident while he sat in the patrol vehicle, instructing her to "get [his] bag" and give it to the officers, which led to the resident returning to her apartment and retrieving the tote and bag. The officers' observation of the bag's contents–packaged marijuana–was included in the warrant application being prepared contemporaneously.

While the Fourth Amendment requires the police to obtain a warrant before a search, one established exception to the warrant requirement is a search that is conducted pursuant to consent. United States v. Wolff, 830 F.3d 755, 758 (8th Cir. 2016). A defendant's consent is voluntary if "it was the product of an essentially free and unconstrained choice, rather than the product of duress or coercion, express or implied." United States v. Morreno, 373 F.3d 905, 910 (8th Cir. 2004). "The government bears the burden to prove by a preponderance of the evidence that consent to search was freely given." United States v. Aguilar, 743 F.3d 1144, 1147 (8th Cir. 2014) (quoting United States v. Arciniega, 569 F.3d 394, 398 (8th Cir.

2009)). Courts consider a variety of factors in determining whether consent was voluntary, including: "a defendant's age, intelligence, and education; whether he cooperates with police; his knowledge of his right to refuse consent; and his familiarity with arrests and the legal system." United States v. Bearden, 780 F.3d 887, 895 (8th Cir. 2015). Courts also consider "environmental" factors in determining the voluntariness of consent, including: "whether [law enforcement] threatened, intimidated, punished, or falsely promised something to the defendant; whether the defendant was in custody or under arrest when consent was given and, if so, how long he had been detained; and whether consent occurred in a public or secluded area." Id.

The district court credited the officers' testimony regarding the conversation between the resident and Sallis that occurred after the officers asked her for consent to search her apartment and after she requested to speak with Sallis first. The court also viewed officers' body camera videos that included the time period when Sallis spoke to the resident. The court concluded that under the totality of the circumstances Sallis's instructions to the resident to "go get my bag," and his repeated assurance to the officers that "I'll give it to you" (referring to the marijuana), demonstrated his implied consent to search the bag. The court also concluded that the consent was voluntary because, although Sallis was in custody at the time, those in custody can still voluntarily consent to a search, and in this instance, Sallis had been advised of his constitutional rights and his statements were not the result of officers questioning him or asking for consent. Rather, Sallis was responding to the resident and did so less than thirty minutes after he had been taken into custody and less than fifteen minutes after he had been read his Miranda rights. It was the resident who asked to speak to Sallis. Given the time frame and the circumstances, we agree with the district court that the fact that Sallis was in custody at the time he talked to the resident and gave consent does not meaningfully weigh against a finding of voluntariness. Finding no error with the factual findings made by the district court, we find the denial of Sallis's motion supported by substantial evidence, and affirm the

district court's conclusion that Sallis voluntarily consented to the seizure and subsequent search of the bag in the resident's apartment.

### B.    Inevitable Discovery

Here, the government argued to the district court, and the district court agreed, that even *if* the entry into the apartment violated Sallis's Fourth Amendment rights and Sallis did *not* voluntarily consent to the search of his bag, the court should not suppress the evidence because it would have been inevitably discovered as a result of the execution of the search warrant.  We agree.

Where information is discovered after police violate the Fourth Amendment, the evidence should not be suppressed "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." Nix v. Williams, 467 U.S. 431, 444 (1984). On appeal, Sallis challenges this ruling as well, claiming that because the officers exploited their presence in the apartment to obtain the necessary information added to the search warrant affidavit, all of the evidence obtained must be suppressed. However, whether the officers met the resident at the threshold of the apartment or whether she found them inside as a result of their entry given concern for the well-being of the children they believed to be present, is inconsequential in the ultimate analysis.  No evidence relevant to the instant inquiry was gained as a result of these initial actions.  Regardless, even assuming this initial entry was illegal and we additionally assume there were infirmities with Sallis's consent to search his bag, we agree that the inevitable discovery doctrine applies. Id.

The officers had sufficient evidence to support the issuance of the warrant at the time they arrested Sallis, regardless of the later inclusion of the information that marijuana was present in the apartment.  As previously noted, at the time the decision was made to prepare the search warrant affidavit, the officers had the following

information from the CI and their own surveillance: (1) Sallis entered and exited the apartment building from the area consistent with the entry and exit from the specific apartment the CI told them was Sallis's location, (2) Sallis participated in what appeared to their trained eyes to be drug-trafficking activities, (3) after Sallis's arrest, officers discovered marijuana and cash on the back seat of the second vehicle near where Sallis sat, (4) the officers' general knowledge that firearms are tools of the drug trade, (5) as well as the officers' knowledge of Sallis's involvement with the shooting in late November and the fact that they did not recover a firearm during the earlier search of Sallis's residence. Accordingly, even if there were any doubt regarding Sallis's consent to search his bag located inside the apartment, which we already determined was not constitutionally infirm, the inevitable discovery doctrine applies. Under Nix, the evidence is admissible nonetheless, as it would have been ultimately or inevitably discovered by lawful means in the execution of the warrant already being pursued even without the additional information added after the officers discovered the marijuana in the bag. Id.; see also United States v. Thomas, 524 F.3d 855, 858, 860-863 (8th Cir. 2008) (Colloton, J., concurring) (discussing this circuit's two-pronged approach to Nix).

## III.  CONCLUSION

For the reasons stated herein, we affirm the denial of Sallis's motion to suppress.

_____