# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-1707

_____

United States of America

*Plaintiff - Appellee*

v.

Michael A. Green

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 14, 2019
Filed: July 12, 2019

_____

Before SMITH, Chief Judge, BENTON and STRAS, Circuit Judges.

_____

SMITH, Chief Judge.

Michael Green entered a conditional plea of guilty to possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Green conditioned his plea on his retaining the right to

appeal the district court's[1] denial of his motion to suppress evidence seized pursuant to an inventory search of his vehicle. He asserts on appeal that officers violated the Grandview, Missouri, Police Department's tow policy, and therefore the Fourth Amendment, when they ordered a tow for the disabled vehicle he occupied. He contends the district court should have suppressed inculpatory evidence obtained during the vehicle's inventory search. Upon review, we affirm the denial of the motion to suppress.

I. *Background*

On the morning of September 4, 2014, Grandview, Missouri Police Officer Andrew Bolin answered a call about a suspicious person at 14700 Pine View Drive. When he arrived on the scene, Officer Bolin found Green asleep in the driver's seat of a 1996 Saturn sedan with its hood and trunk open. The car was parked in front of a stop sign near a busy residential intersection. Officer Bolin ran the license plate. The plate came back associated with a 1988 Oldsmobile and was registered to a Katherine Gooch in Boonville, Missouri.

Green awoke and explained to Officer Bolin that he was staying at a nearby motel and that his car had broken down the night before. When Officer Bolin asked for his driver's license, Green produced only an identification card. Officer Bolin confirmed with dispatch that Green did not have a valid driver's license. Dispatch also informed him that Green was on supervision following convictions for burglary and possession of a controlled substance and was known to be armed.

Officer Bolin asked Green for consent to search the car. Green declined. Green told him that his girlfriend, Katherine Gooch, owned the car, and provided a phone

---

[1]The Honorable Greg Kays, United States District Judge for the Western District of Missouri, adopting the report and recommendation of the Honorable Sarah W. Hays, United States Chief Magistrate Judge for the Western District of Missouri.

number, but he then said that the number belonged to a different girlfriend. Officer Bolin decided to have the car towed because the car was disabled on a public roadway, blocking an intersection, with improper license plates, and Green did not have a valid driver's license even if the car would have started.

Green wanted to remove some of his property from the car, but Officer Bolin would not release any property that was not clearly identifiable as belonging to Green. Officer Bolin issued Green two traffic citations and informed him that he was free to go. Officer Bolin conducted an inventory search and found a zip pouch containing $500, a bubble pipe, and a baggie containing about three grams of methamphetamine. He also found two more bags containing 387 grams of methamphetamine. Green was arrested and later indicted for possession with intent to distribute methamphetamine. He filed a motion to suppress the evidence discovered during the inventory search.

Citing the police department tow policy's definition of a "Custody Tow," the district court determined that the tow policy gives an officer discretion to tow a vehicle when it is "disabled on a public street." *United States v. Green*, No. 4:15-cr-00249, 2017 WL 902907, at *1 (W.D. Mo. Mar. 7, 2017). The district court concluded that the tow of Green's disabled vehicle complied with the standardized towing procedures. Thus, Officer Bolin's possible investigatory motive in towing the car and conducting the inventory search did not matter because the car would have been searched anyway due to its lawful impoundment. Green pleaded guilty following the district court's denial of his motion to suppress. As part of a plea deal, Green reserved the right to appeal the denial of the suppression motion.

## II. *Discussion*

On appeal, Green raises a compound issue: "Does the seizure of a vehicle and a purported inventory search violate the Fourth Amendment if the police officer involved does not follow the police department's tow policy and seizes the car

because he believes it might be stolen or contain stolen property?" Appellant's Br. at 2. This appeal, as Green states it, posits that Officer Bolin violated the Fourth Amendment by towing the car that Green occupied. Green bases that contention on two conditions he believes were present at the time the car was towed: (1) Officer Bolin did not follow the police department's tow policy, and (2) Officer Bolin's real reason for towing the car was his suspicion it might be stolen or contain stolen property. Green disputes the district court's interpretation of the tow policy as well as some of the court's factual findings. He argues that the vehicle must have qualified as "abandoned" in order for this tow to have been properly classified as a "Custody Tow" under the department's tow policy. He also claims Officer Bolin violated the policy by not allowing Green to call for a tow himself—an allowance he asserts the policy's "Non-custody Tow" procedures mandate. He argues that this violation, coupled with the officer's improper investigatory motive, rendered the subsequent inventory search unreasonable.

We review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Sallis*, 920 F.3d 577, 581 (8th Cir. 2019). "We will affirm the district court 'unless the denial of the motion is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made.'" *Id*. (quoting *United States v. Gunnell*, 775 F.3d 1079, 1083 (8th Cir. 2015)).

"The central question in evaluating the propriety of an inventory search is whether, in the totality of the circumstances, the search was reasonable." *United States v. Kennedy*, 427 F.3d 1136, 1143 (8th Cir. 2005). An inventory search is reasonable if it is "conducted according to standardized police procedures," because doing so "vitiate[s] concerns of an investigatory motive or excessive discretion." *United States v. Marshall*, 986 F.2d 1171, 1174 (8th Cir. 1993).

"[P]olice may exercise discretion to impound a vehicle, 'so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.'" *United States v. Petty*, 367 F.3d 1009, 1012 (8th Cir. 2004) (quoting *Colorado v. Bertine*, 479 U.S. 367, 375 (1987)). This requirement "ensure[s] that impoundments and inventory searches are not merely 'a ruse for general rummaging in order to discover incriminating evidence.'" *Id*. (quoting *Florida v. Wells*, 495 U.S. 1, 4 (1990)). But a policy cannot feasibly give "clear-cut guidance in every potential impoundment situation." *Id*. "As with an inventory search, an impoundment policy may allow some 'latitude' and 'exercise of judgment' by a police officer when those decisions are based on concerns related to the purposes of an impoundment." *Id*. (quoting *Wells*, 495 U.S. at 4). Here, Green challenges Officer Bolin's decision to order the impoundment of the vehicle as motivated by investigatory curiosity rather than public safety.

Upon review, we conclude that Green has not shown that Officer Bolin failed to follow the tow policy in a manner that renders the tow and subsequent search unreasonable. The policy in question is a portion of the Grandview Police Operations Manual. The manual provides Standard Operating Procedures for vehicle tows. It identifies two types of tows—Custody Tows and Non-Custody Tows. The policy provides the following definition of a "Custody Tow":

> Custody Tow - A vehicle is towed because it is parked illegally, stolen and recovered, abandoned, disabled on a public street, ordered removed by the Police Department or other authorized agent of the City because of a violation of law (including trespass to private property), vehicles impounded by the Police Department, and vehicles ordered removed from private or public property by the Municipal Court under the nuisance ordinances of the City. Tows resulting from accidents are custody tows if the operator is arrested or incapacitated to the extent that he is unable to request a tow service.

Appellant's Addendum at 1. Officer Bolin faced a factually complex scene in deciding to tow the car. These facts included: (1) the car was illegally parked in the lane of traffic; (2) the car's presence created a public safety hazard by impeding traffic; (3) the car was disabled and could not move on its own power; (4) vehicles approaching the intersection behind the car were forced to drive in the opposing lane of traffic to avoid hitting it; (5) the car's license plates were registered to another vehicle, in violation of the law; (6) Green did not possess a valid driver's license; and (7) Green had ostensibly been there for hours and had not arranged for the car's removal.

The facts surrounding the tow of the car that Green occupied meet the definition of "Custody Tow" in several respects—e.g., "parked illegally," "disabled on a public street," "ordered removed . . . because of a violation of law." Green argues that these facts, however, did not justify the tow because Green had not abandoned the car. Green favors an interpretation that would treat these facts as only applicable to an abandoned vehicle.

To support his interpretation of the tow policy, Green points to the "Towing Procedure for Custody Tows" that follows the definition. The policy first describes how to order a Custody Tow and how to complete a corresponding tow form, then it breaks up the procedures under subheadings for abandoned vehicles, accidents, arrested persons, and stolen/wanted vehicles. The relevant procedures read as follows:

> 1.3. Abandoned Vehicles - Employees of the Grandview Police Department may authorize the contract tow service to remove the following vehicles to a place of secure storage:
>
> . . . .

-6-

1.3.2. Vehicles disabled to constitute an[] obstruction to traffic, and the person in charge of the vehicle is unable to provide for its removal.

1.3.3. Illegally parked vehicles placed in such a manner as to constitute a definite hazard or obstruction to the movement of traffic.

. . . .

1.3.7. Under emergency circumstances where the vehicle restricts the use of a public street or highway.

1.3.8. Vehicles parked on a public street without license plates, with plates reported stolen or taken without the consent of the owner.

Appellant's Addendum at 2. We note that subheading 1.3. presents a departure from the policy's general construction: "1.4. Accidents," "1.5. Arrested Persons," and "1.6. Stolen/Wanted Vehicles" stand alone as subheadings, with procedural provisions following below them. By comparison, subheading 1.3. contains an explanatory addition, which supports two plausible interpretations of the policy: (1) the provisions under subheading 1.3. only apply to abandoned vehicles, as generally defined, that fall into one of the eight listed categories; or (2) the provisions actually define what constitute "Abandoned Vehicles" for purposes of the policy.

Green argues that "[t]he tow policy does not define what constitutes an abandoned vehicle" and emphasizes that "[t]he Grandview Municipal Code defines an abandoned vehicle as 'any *unattended* motor vehicle . . . subject to removal from public or private property as provided in this Article, whether or not operational.'" Appellant's Br. at 21–22 (quoting Grandview, Mo., Code of Ordinances art. IX, § 14-149 (Feb. 22, 2000)). Green asserts that since the car was not "unattended," Officer Bolin was instead required to abide by the policy's "Non-custody Tow" procedures. These procedures provide that "a citizen requesting assistance in removing their disabled vehicle may request any licensed tow service located within the City, and the

Department will attempt to contact them on behalf of the citizen." Appellant's Addendum at 4. Because Green requested assistance in procuring a private tow, he argues, Officer Bolin should have called for one on his behalf instead of impounding the vehicle.

The policy's construction is admittedly not an exemplar of clarity, but the district court's interpretation of the policy as authorizing a Custody Tow given the operative facts was reasonable. First, the Custody Tow definition distinguishes "abandoned" vehicles from those that are "parked illegally," "disabled on a public street," and "ordered removed" for violations of law, but there are no Custody Tow provisions that address the latter three categories except under the ambiguous subheading of "Abandoned Vehicles." Second, there are no Custody Tow provisions for trespassing or nuisance vehicles whatsoever, despite their explicit inclusion in the Custody Tow definition. This suggests that the Custody Tow procedures outlined in the policy should not be considered exhaustive. Third, as Green concedes, the policy itself does not precisely define "abandoned." Instead, the policy gives examples of abandoned vehicles in subsections 1.3.1. through 1.3.8. A reasonable interpretation of the policy provides officers a measure of discretion to determine when a vehicle meets the criteria illustrated by the examples. *See Petty*, 367 F.3d at 1012 (finding that a department policy which allowed for police discretion to determine whether a driver was "available" or a vehicle was "abandoned" constituted sufficiently standardized procedures). Viewing the record facts, we conclude Officer Bolin's decision to inventory and tow the vehicle was based on "something other than suspicion of evidence of criminal activity." *Bertine*, 479 U.S. at 375. We agree with the district court that Officer Bolin reasonably ordered the impoundment pursuant to the police department policy's "Custody Tow" definition.

The decision to impound a vehicle need not "be made in a 'totally mechanical' fashion" because "[i]t is not feasible for a police department to develop a policy that provides clear-cut guidance in every potential impoundment situation." *Petty*, 367

F.3d at 1012 (quoting *Wells*, 495 U.S. at 4). When Officer Bolin arrived at the scene, Green was "passed out" in the driver's seat of the disabled car. Tr. of Hr'g on Mot. to Suppress at 8, *United States v. Green*, No. 4:15-cr-00249 (W.D. Mo. Dec. 20, 2016), ECF No. 42. He knew Green did not have a driver's license and that he did not own the car. Though the car was inoperable and constituted a public safety hazard, Green did not appear to have taken any significant steps toward procuring a tow. He gave confused, if not evasive, answers to the officer's questions. Officer Bolin's refusal to release the vehicle to Green was not unreasonable under these circumstances. *See United States v. Long*, 906 F.3d 720, 725 (8th Cir. 2018), *petition for cert. filed*, No. 18-9801 (U.S. June 13, 2019).

In *Long*, we upheld the decision to immediately impound a rental car that had been parked without permission in a homeowner's backyard. *Id*. at 724. Before the tow truck arrived, the driver returned to the vehicle and explained to officers that he had parked there to avoid being seen while he visited the nearby home of a girlfriend. *Id*. at 722. Although he claimed to have permission to drive the vehicle, which had been rented in someone else's name, he did not provide keys and he could not reach the purported renter. *Id*. We found that his presence did not "lessen[] the need or the propriety of towing the vehicle and performing an inventory search" since his "behavior and explanations" had "left officers with little assurance that it would have been appropriate to release the vehicle to his control." *Id*. at 725.

In this case, it is undisputed that the vehicle required towing, regardless of who ordered the tow. Officer Bolin decided he needed to act immediately, and he reasonably questioned the propriety of releasing the vehicle to Green's control. His actions were consistent with his role as a community caretaker, and his decision was largely "based on concerns related to the purposes of an impoundment." *Petty*, 367 F.3d at 1012; *see also id*. at 1011–12 ("Impoundment of a vehicle for the safety of the property and the public is a valid 'community caretaking' function of the police." (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973))); *South Dakota v.*

*Opperman*, 428 U.S. 364, 369 (1976) ("The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.").

We also conclude that Officer Bolin did not violate the "Non-custody Tow" provisions that Green argues must govern this case. That portion of the policy explicitly grants discretion to officers in dealing with disabled vehicles: "Whenever an officer considers it necessary to remove a vehicle, he or she may consult with the owner to obtain a towing firm of their choice if time constraints allow." Appellant's Addendum at 4. If that course of action is for some reason unsatisfactory, "the officer will contact the city's contract tow service for immediate removal, and remain at the scene until the vehicle is removed." *Id*. Officer Bolin decided a tow was necessary, and he knew Green was not the car's owner. Instead of taking time to track down Gooch—the car's owner—Officer Bolin decided to order the immediate removal of her vehicle, which was broken down, parked in front of an intersection, and bearing license plates registered to a different car altogether. Even as Officer Bolin was talking to Green, other vehicles were forced to drive around them, into the opposing traffic lane, to avoid the obstruction the disabled vehicle caused. The officer was justifiably concerned about the immediate threat the vehicle posed to public safety, and he acted within the discretion afforded him by the policy in ordering its immediate removal. Even if this were considered a "Non-custody Tow," the policy provides that "[a]ll vehicles towed at the direction of a police officer shall undergo an inventory of contents." *Id*. Officer Bolin followed the policy by ordering the inventory search.

We conclude that the decision to impound the vehicle complied with the police department's tow policy. Because the impoundment was valid, and because Officer Bolin's "sole purpose" for impounding the vehicle was not to investigate criminal activity, *Petty*, 367 F.3d at 1013, the corresponding inventory search was reasonable.

### III. *Conclusion*

We accordingly affirm the district court's denial of Green's motion to suppress.

_____